M. MARTIN v. T. O. ANDERSON AND W. J. THOMPSON.

No. 205.

1. **Execution Sale—Grounds for Setting Aside.**—Lands were sold at a grossly inadequate price under execution issued from a Justice Court. No certified copy of the bill of costs accompanied the execution. The execution defendant had personal property in the county, but no effort was made to discover or levy on it. There were irregularities in the proceedings that eventuated in the judgment of the Justice Court, such as rendered its validity at least questionable. The execution defendant promptly tendered to the purchaser the amount paid by him and all costs, and moved to set aside the sale. *Held*, that the irreg-

ularities must have contributed to the inadequacy of the price, and that the sale should be set aside.

2. **Same — Equitable Relief.** — Where there is gross inadequacy of price at such sale, and the execution defendant against whom the judgment was wrongfully obtained is without fault or negligence in the matter, and moves promptly to set the sale aside, tendering the full amount paid by the purchaser, equity may, it seems, grant the relief, irrespective of irregularities, or the validity of the judgment, on the ground that it would be unconscionable for the purchaser to hold the property under such circumstances. See the opinion.

3. **Same — Case Criticised.** — The opinion in Allen v. Pierson, 60 Texas, 604, on this subject, held, in view of decisions of the Supreme Court both later and prior thereto, not to give a correct statement of the rule applicable here.

APPEAL from Taylor. Tried below before Hon. T. H. CONNER.

*Martin & Jones*, for appellant.—The judgment of the court was contrary to the law and the evidence, in this, that it failed to set aside the sale of all three of the tracts of land in controversy, and to cancel the defendant's deed, for the following reasons:

1. Because the judgment in the Justice Court was rendered without jurisdiction over the person of the defendant, and therefore void.

2. Because the execution issued under said judgment was also void; but if valid, the bill of costs for which the land was sold was neither signed nor certified to by the justice as correct.

3. Because of the failure of the constable to levy upon the personal property of the defendant, or to use any diligence to ascertain where said property was.

4. Because the land was sold for a grossly inadequate consideration. Taul v. Wright, 45 Texas, 894; Pearson v. Flanagan, 52 Texas, 266; Pearson v. Hudson, 52 Texas, 352; Kaufman & Runge v. Morris, 60 Texas, 121; Weaver v. Nugent, 72 Texas, 275; Johnson v. Crawl, 55 Texas, 573.

*Walton, Hill & Walton* and *L. A. Hill*, also for appellant.—While the court will not usually set aside an execution sale on the sole ground of gross inadequacy of consideration, yet where, in addition to this, there are irregularities in the execution and advertisement, the courts readily set aside such sale. Taul v. Wright, 45 Texas, 395; Hancock v. Metz, 15 Texas, 210; Sydnor v. Roberts, 13 Texas, 598; Howard v. North, 5 Texas, 290.

*Cockrell & Cockrell* and *John Bowyer*, for appellees.—1. The execution was not void because the cost bill was not certified to. The absence of such certificate was but an irregularity. Hughes v. Driver, 50 Texas, 175; Williams v. Ball, 52 Texas, 610; Freem. on Ex., sec. 40; 7 Am. and Eng. Encycl., 123; 8 Lea (Tenn.), 581.

2. The failure to levy on personal property is but an irregularity. Allen v. Pierson, 60 Texas, 604; Odle v. Frost, 59 Texas, 684; Weaver v. Nugent, 72 Texas, 280; Donnebaum v. Tinsley, 54 Texas, 366; Stone v. Day, 69 Texas, 17.

3. Mere inadequacy of price will not authorize a court to set a sale aside; and if there is any inadequacy, and also irregularities, then it must be shown that such irregularities caused the inadequacy. Allen v. Pierson, 60 Texas, 604; Weaver v. Nugent, 72 Texas, 272; Jones v. Pratt, 77 Texas, 210.

STEPHENS, ASSOCIATE JUSTICE.—This suit was brought by appellant, to set aside an execution sale of 660 acres of land, on the ground that the sale had been made under a void judgment and at a grossly inadequate price, attended with certain alleged irregularities. The issues are stated with substantial accuracy in appellant's brief, as follows: "On the 3rd day of December, 1889, suit was begun in the Justice Court of precinct number 1, Taylor County, by the Keller Medicine Company against appellant, upon an account for the sum of $41.55. On the day that this suit was filed, to-wit, the 3rd day of December, 1889, at the instance of the plaintiff's attorney, the justice issued a citation for the defendant to Burnet County, Texas. This citation was made returnable on the 6th day of January, 1890, that being the next regular term. This citation was received by the sheriff of Burnet County in due course of mail, but was never returned to the Justice Court whence it was issued. On the 17th day of December, 1889, the justice of the peace issued another citation in the same suit, for the defendant, M. Martin, to Mills County, Texas. This last citation was served upon the defendant, Martin, in Mills County, on the 21st day of December, 1889. This citation was also made returnable on the 6th day of January, 1890. Both these citations purported to be original citations. Immediately upon being served, the defendant, M. Martin, had a letter written to H. L. Bentley, an attorney in Abilene, to represent him on the trial of the said case.

"On the 6th day of January, 1890, the case was tried in the Justice Court. H. L. Bentley declined to represent defendant. T. M. Daugherty appeared for the plaintiff. The defendant was not present, nor was he represented by counsel. Just prior to the trial, Bentley informed Daugherty that he would not appear for the defendant, but gave him some written pleadings for defendant, comprising exceptions to the citation and a plea of the statute of limitations.

"T. M. Daugherty gave these written pleadings to the justice of the peace, and on the trial of the case appeared for the plaintiff in the suit. Judgment was rendered on said day by the justice against defendant, and in favor of the Keller Medicine Company for the sum of $41.55, with in-

terest at the rate of 8 per cent per annum. On the 17th day of January,. 1890, the justice of the peace issued an execution directed to the sheriff or any constable of Taylor County. No certified copy of the bill of costs. was attached to the execution. This execution was received by R. E. Burch, constable of precinct number 1, and on the same day, the 17th day of January, was by him levied upon three several tracts of land belonging to appellant in Taylor County, viz., a tract of 280 acres, a tract of 160 acres, and a tract of 220 acres.

"These lands were advertised for sale by the constable, but the character of the notice of sale was the subject of some controversy on the trial. On the 4th day of March, 1890, these three tracts were exposed to sale at the court house in Abilene. The two defendants in this suit were present, but as to the number of persons present, and as to what occurred during the sale, was also the subject of controversy on the trial. The first tract, 280 acres, was sold for the sum of $20; the second tract, 160 acres, was sold for $30, and the third tract, 220 acres, was sold for the sum of $35. T. O. Anderson was the purchaser of all the lands, for the aggregate sum of $85. On the 26th day of March, 1890, he executed a deed to W. J. Thompson to an undivided half-interest in these three tracts. Prior to the execution sale of these lands, the appellant, Martin,. had mortgaged them to the Texas Loan Agency for about $5500, which. sum was borrowed on five years time. At the time of levy and sale, appellant, Martin, owned about $600 worth of personal property in Taylor County. Martin returned to Taylor County about the 1st day of April, 1890, from which he had been absent for nearly one year. This suit was. begun in the District Court of Taylor County on the 17th day of April, 1890. On the 18th day of October, 1890, the case was tried before the court, a jury being waived. The result of the trial was a judgment in favor of the appellant, Martin, for the third tract sold, to-wit, the 220 acres tract, and a judgment in favor of appellees for the other two tracts."

After a thorough consideration of the record in this case, we have come to the conclusion that justice demands that the execution sale in question should be set aside in toto. The lands are situated near the town of Abilene, and, according to the preponderance of the evidence, were at the date of the sale (4th of March, 1890), very valuable. From the widely differing estimates of the several witnesses, the learned judge trying the case found the reasonable market value to be, for the 280 acres tract, $2240; for the 160 acres tract, $800; for the 220 acres tract, $5500; aggregating $8540, the whole being encumbered with a mortgage for $5500 on five years time. This conclusion we approve as a reasonable and fair deduction from the evidence. The property, therefore, sold for less than 3 per cent of its net value. That this was a grossly inadequate price does not admit of question.

The court further found, that the 220 acres tract, at the time of the trial, was worth from $75 to $100 per acre, and as to it set the sale aside. The sale in other respects was sustained, it seems, because the judgment under which it was had was deemed conclusive against appellant, and the irregularities complained of were found not to conduce to the inadequacy of price.

It may be that this judgment was not void. It is not copied in the record, and there is a degree of uncertainty as to its recitals. If the issuance of a second citation before the return of the first be deemed only an irregularity, it is left in doubt whether the judgment was rendered on the attested account sued on, or on some written promise of appellant subsequently made, with the preponderance of the evidence in favor of the latter theory. The following testimony of T. W. Daugherty, who obtained the judgment for the Keller Medicine Company, contains the facts:

" I am a lawyer; been practicing for two years. Live here in Abilene. During the fall of the year 1889, Mr. H. L. Bentley, an attorney, and myself officed together. We were not partners, but sometimes divided fees, and his Justice Court practice was generally turned over to me. In October, 1889, Mr. Bentley turned over to me an account in favor of the Keller Medicine Company, of Fort Wayne, Indiana, against M. Martin, the plaintiff in the suit, for $41.45. At the time this account was delivered to me, Mr. Bentley stated that he could or would not bring suit, because he was satisfied that Mr. Martin expected him to represent him in all cases that would come up in his absence, although he had not paid him any fee, therefore he would prefer to have nothing to do with the suit. I took the claim, and saw that the authentication of it was insufficient under our statutes, and I prepared an affidavit and attached to the account and forwarded same to Keller Medicine Company, which was sworn to by J. O. Keller and returned to me. I filed this account for suit on the 3rd day of December, 1889, with W. A. Minter, justice of the peace in precinct number 1. Prior to this I had written a letter to Dr. M. Martin, plaintiff in this suit, at Burnet, Texas, to ascertain where his residence was. The envelope was properly addressed to M. Martin, but the inside was addressed to Dr. M. Smith. This was simply a clerical error on my part, as the letter was intended for Dr. M. Martin. I signed Bentley's name and my own to the letter. [Witness here identified envelope and letter shown him.] On the 3rd day of December, 1889, the day this suit was filed, the justice issued a citation to the defendant, directed to Burnet County, returnable on the 6th day of January, 1890, which was the next return day of Justice Court. This citation was delivered to me by the justice on the day of its issuance, and I immediately enclosed it in an envelope and directed it to the sheriff of Burnet County. I stamped it and put it in the postoffice. I never saw this citation afterwards. I learned

afterwards that M. Martin was not in Burnet County, but was in Mills County.   On the 7th of same month (December) I procured another citation from the justice to Mills County, also returnable on the 6th day of January.   This citation was duly served on M. Martin.   No other citation was issued in the case that I know of.   On the 6th day of January, 1890, as I was starting to the court house, Bentley handed me some pleas of Martin, and asked me to give them to the justice of the peace; that he would not represent him in that case.   I took these pleas, and among them was a plea of the statute of limitation, and handed them to the justice, and stated what Mr. Bentley had told me.   Some jocular remark was made by the justice about my representing both sides, but he filed the pleas.   He then intimated that the law was with the defendant Martin, and I showed him some letters from Martin indicating a subsequent promise, and he rendered judgment against the defendant for the amount of the account.   Mr. Martin was not present when the judgment was rendered."

If the judgment was rendered on the written promise, it was on a new cause of action, for which no citation had issued.   Coles v. Kelsey, 2 Texas, 542; Leigh v. Linthecum, 30 Texas, 101.

While it has been held several times, that recitals in the judgment entry as to service and appearance are conclusive when collaterally questioned (Williams v. Hays, 77 Texas, 283, and cases there cited), in the absence of such recitals, a distinction has been taken between the conclusiveness of a Justice Court judgment and that of a court where the pleadings are required to be written.   Wilkerson v. Schoonmaker, 77 Texas, 615.

It is clear from this record that Martin did not appear before the Justice Court, and that no appearance was made for him.   The filing of the pleas by plaintiff's attorney was, under the circumstances, unauthorized. Appellant had no knowledge of the judgment or execution till after the sale, nor was this entirely the result of negligence on his part.   In view of what had passed between him and H. L. Bentley before he left Taylor County, there was nothing unreasonable in his relying on the latter to represent him in the suit.   The pleas were prepared by a lawyer in Mills County, at the instance of Martin, and sent to Mr. Bentley to be used by him in representing Martin as his attorney, and not to be filed by plaintiff's attorney to bind Martin by an appearance inops consilii.   Without a copy of the judgment containing all its recitals, we can not well determine the conclusive force of any of them, and hence are not prepared to decide that the doctrine of absolute verity has application to this judgment.

On the assumption, however, that the judgment was not void, we think the sale should still be set aside for irregularity and gross inadequacy of price.   Our conclusion is, that the irregularities, or at least

some of them, complained of were calculated, under the circumstances of this case, to prevent the property from bringing something like its value, and that the court below was in error in concluding that they did not conduce to the inadequacy. Take, for instance, the irregularity of issuing the execution by the justice of the peace to collect costs, without a certified copy of the taxed costs. Here a plain and positive requirement of the statute was disregarded. Rev. Stats., art. 1628. Would a prudent purchaser of real estate bid anything like its value when it is sold under an execution from a Justice Court to collect the costs of that court, in the absence of the certified bill of costs required by the statute to accompany such an execution as its support and the authentic evidence of its validity? If not, how can it be declared that such an irregularity does not have a depressing effect on an execution sale? In this case, why did these valuable lands, situated so near an important and growing town, sell for so little? Why were the bidders so few? The record furnishes no answer to these questions, unless it be found in the suspicion of invalidity arising naturally out of the irregular and improper legal proceedings which culminated in the sale.

The judgment was obtained, the execution issued, and the sale made without the knowledge or fault of the defendant therein, and within the shortest possible time. No effort was made to find personal property, though it seems the execution might, by proper diligence, have been satisfied in that way.

Appellant moved promptly to set aside the sale upon its coming to his knowledge, tendering and depositing in court the money paid by appellees at and after the sale. Without discussing in detail the several irregularities and other circumstances attending the sale, we are of opinion, that they were calculated, under the circumstances of this case, to produce the result complained of; and as the gross inadequacy, amounting to confiscation, can not otherwise be accounted for, they must be held to have at least contributed to that result.

The disposition of this case in the court below was doubtless influenced by the opinion of Justice Watts in Allen v. Pierson, 60 Texas, 604, which does not seem to us to be a correct statement of the rule on this subject, especially in view of some of the later decisions of our Supreme Court, as well as some rendered prior to that decision. Irvin v. Ferguson, 83 Texas, 491; Weaver v. Nugent, 72 Texas, 280; Pearson v. Flanagan, 52 Texas, 250; Taul v. Wright, 45 Texas, 394; Chamblee v. Tarbox, 27 Texas, 140.

Where the defendant in execution is without fault, and moves promptly to set aside the sale, tendering to the purchaser the money paid by him for the land, and shows a gross inadequacy of price, coupled with irregularities or other circumstances calculated to produce the result complained

of, we think he is entitled to the equitable relief sought, unless it is further made to appear that in fact the alleged irregularities or other circumstances did not conduce to such inadequacy.

But if the inadequacy in this sale stood alone, except as it was affected by the fraudulent judgment under which the sale was made, and that judgment, on account of its recitals, be held conclusive in this proceeding, we are not prepared to hold that the sale should not still be set aside. After it has come to the knowledge of a purchaser at execution sale that the property of the defendant in execution has been sacrificed by means of a sale under a judgment fraudulently obtained in his absence, and, with this knowledge, he holds on to the property thus acquired for a grossly inadequate sum, and refuses a prompt tender of full reimbursement, would it not be unconscionable in him to thus profit by another's fraud, having no other defense to plead than the rule of public policy which upholds execution sales? Would not equity apply a still higher rule of public policy, and do justice in such case?

Upon the whole record, we think the sale should be set aside, and that the judgment should be reversed and here rendered for appellant as prayed for in his petition, and that the money deposited in the court below be paid to appellees.

*Reversed and rendered.*

Delivered September 27, 1893.

Motion for rehearing was denied.