J. P. SIMPSON, GUARDIAN, &c., v. ASA MITCHELL'S EXECUTORS. ·

1. PROBATE SALE—CITATION—PRACTICE.—An order for sale of lands of a minor was made July 5, 1873, upon petition of a creditor, who had obtained an order against the estate for the payment of his debt. Notice of the application for sale was made by publication in " The Daily Herald," on the 31st of May, and in "The Weekly Herald," June 7, 14, 21, and 28, 1873. On appeal : *Held*—
   1. The order, having been made without notices having been

duly posted, as required by the act of 27th May, 1873, (Paschal's Dig., art. 5703,) was not authorized.

2. That such citation was defective under the old law, (Paschal's Dig., art. 5703,) requiring publication " once a week for four weeks successively" in a newspaper.

3. Such order of sale should have been preceded by an order ascertaining the want of funds, &c.

4. The appearance of the guardian to resist the order of sale did not cure the want of the statutory notice.

2. Discussion of mode of procedure by creditor, to subject lands of a minor to the payment of debts, through the Probate Courts.

APPEAL from Bexar.   Tried below before the Hon. George H. Noonan.

Asa Mitchell's executors had recovered a judgment against I. P. Simpson, as guardian of the Post minors, and had, on May 6, 1873, obtained an order from the District Court, sitting in matters of probate, directing the guardian to pay the same.   On May 31, 1873, the executors filed their petition in the District Court, praying that certain real property described in their petition be sold to pay their judgment.

Thereupon, notice of said application was issued on. May 31, 1873, and, on the 21st day of June, 1873, H. C. Thompson, editor of the "Herald" newspaper, made affidavit of the mode of publication in said paper, that being the only return showing how such notice was given—that the citation "has been published in said paper for four consecutive weeks."

On June 24, 1873, the court ordered a sale of the lands, and on the following day, June 25th, the guardian came into court and filed exceptions to the decree.   Said decree of June 24, 1873, is not in the transcript.   It seems to have been supplied by the subsequent action of the court.

The executors then filed, on July 1, 1873, a return, an amendment of the former, being the affidavit of J. D. Logan, editor of the "Herald," to the effect that the advertisement had been published for five consecutive weeks, to wit: in the daily of May 31, and in the weekly of June 7, 14, 21, and 28, 1873.

On July 5, 1873, the guardian filed his objections to a sale being ordered, substantially on the ground that action on that day would be premature; that the decree of May 6, 1873, (ordering the guardian to pay the judgment,) was entered without notice; that it is erroneous, because it could not have been lawfully rendered without a showing that the guardian had funds in hand; and that, on the other hand, an order for the sale of lands cannot be granted without showing a want of funds.

On that same day, (July 5, 1873,) the court overruled the objections, and decreed a sale, commanding the guardian to sell, in Bexar county, at public auction, for cash, so much of the lands described as may be sufficient to pay the judgment and all costs.

This decree the guardian moved to set aside, for the reasons—(1.) It was prematurely rendered. (2.) The proceeds of the sale shall be applied to nothing else but the judgment, leaving other debts unpaid. (3.) It disregards the Constitution as to the mode of selling. (4.) Kendall and Comal county lands are to be sold in Bexar county. (5.) No preliminary inquiry was made as to funds, &c.

That motion was overruled as soon as made, and the guardian gave notice of appeal.

*W. B. Leigh*, for appellant.

*McLeary & Wurzbach*, for appellees.—In the first place, this appeal is taken too late, and should be dismissed—the judgment which is appealed from, being rendered on the 5th day of July, 1873, and the next term of the Supreme Court began on the 1st of December, 1873; and there was certainly time to have had the transcript filed before the beginning of the term, as more than sixty days had expired before the term began. (See Probate Act, secs. 422 and 423, Laws of 1870, p. 198; Roberts v. Landrum, 3 Tex. 16; Mills v. Bagby, 4 Tex., 320.)

But should the court not dismiss the appeal, we invite attention to the following points:

1st. In the assignment of errors, the appellant assigns as error that the section of the law in accordance with which the notice had been given by publication, had been repealed on the 27th of May, 1873, by section 15 of an act passed by the thirteenth Legislature, doing away with the necessity of publication of notice in a newspaper. This was not one of the objections filed by appellee in District Court, for the reason that neither the parties nor the court were, nor possibly could be, aware of the change made in the law. Not having been raised on the trial in the court below, this point cannot be made in the Supreme Court; but if it could, this is certainly not a sufficient objection to set aside the order of sale, especially at the instance of the guardian, who, the record shows, was in court opposing every step taken towards forcing the payment of this claim. He certainly can take no advantage of defective notice, if there was any defect in the notice given. (See, generally, Crosby v. Huston, 1 Tex., 225; O'Connor v. Towns, 1 Tex., 107; Fowler v. Stonum, 6 Tex., 74.)

2d. The publication made was exactly in accordance with the law—" once a week for four weeks successively "—and it was not necessary that a " full week " should have elapsed from the date of the last publication till the granting of the order of sale. (Laws of 1870, p. 174, section 235, act of 15th August, 1870.) The law does not require even that the publication should be made each time in the same newspaper; but if it did, there is nothing to show that the Daily and Weekly Herald are two different newspapers; on the contrary, the affidavits of the editor show that they are the same. The case of Hill v. Faison, 27 Tex., 428, cited by appellant, does not apply to the case at bar, because that decision was made under article 1103 of Oldham & White's Digest, which is identical with article 110 of Paschal's Digest; but this article differs very materially from section 325 of the pro-

bate act, Laws of 1870, p. 174, under which, this notice was given.

3d. It is assigned as error that the order of sale required the sale to be made for cash. It is true that section 239 directs sales to be made on a credit of six months, except in certain cases; but sec. 244 of the same act gives to the court the discretion to order a sale "for cash or on a credit," and that on the confirmation the sale shall be shown to have been made for a fair price. (Laws of 1870, p. 175.)

4th. It is again assigned as error, that the order of sale fails to provide for carrying out the provision of art. 12, sec. 40 of the Constitution, which reads: "All sales of landed property made under decrees of courts, in this State, shall be offered to bidders in lots of not less than ten nor more than forty acres, except in towns or cities, including sales for taxes." It will be observed that this provision has no reference to the manner in which decrees shall be made, but only as to how property shall be "offered to bidders;" and as the guardian is commanded to make the sale, if he does not comply with the provision of the Constitution on the day of sale he has no one to blame but himself.

5th. In his motion to set aside the decree, appellant says that there are other claims of equal degree with the judgment in question against this estate. There is no evidence of this in the record or elsewhere, and it is not true in point of fact.

6th. The appellant also urges that the sale was authorized to be made in Bexar county, when some of the lands lie in other counties. This is authorized by section 240 of the probate act, Laws of 1870, p. 175.

MOORE, ASSOCIATE JUSTICE.—There can be no pretense that notice of the application for the order to the guardian to sell the real property of his wards, for the payment of debts, was given in the manner prescribed by the statute in force when the order was made, from which this appeal is prosecuted. The statute, in plain and unequivocal lan-

guage, declares that no order for the sale of real property, for the payment of debts, shall be made unless notice of the application therefor shall have been given by citation, duly posted, to all persons interested in the administration and estate to show cause why such sale should not be ordered. (Paschal's Dig., art. 5703a.) As no notice of the application was posted, as required by the statute, the order of the court was unwarranted, and must be reversed.

Nor, indeed, was service of notice of the application properly perfected under the previous law, which the court, as well as the parties, evidently supposed was still in force when the proceedings here in question were had.

The order of sale was unquestionably made before the expiration of the time for which the notice of the application was required to be published. (Hill v. Faison, 27 Tex., 428.)

The appearance of the guardian, after the order, for the purpose of objecting to and moving to set it aside, did not cure the defect in the service of notice. The statute requires the posting of the notice, not only for the information of the guardian, but also, that "all persons interested in the administration and estate" may be informed of the application; and certainly the implied waiver of notice, by the appearance of the guardian to contest the application, would not have authorized the court to act upon the application, without notice to others interested in the matter. Much less can it be said that his appearance, after the court has acted, for the purpose of moving to set aside and revoke such unauthorized order, can be held to have this effect.

The order of payment, upon which the application for the order of sale is founded, seems also to have been erroneous, as no notice of the application for this order appears to have been given to the guardian.

When there are debts due by an estate, it would ordinarily seem to be the duty of the guardian to take the proper action to enable him to discharge them without subjecting the estate to the costs of coercive proceedings for this purpose by the

creditors. But if he fails to do so, it is usually better for the creditor to require the guardian to make an exhibit of the condition of the estate. On such exhibit being made, if it appear that there is a necessity for the sale of property, it should be made by order of the court. And should the guardian fail to comply with the order, he should be removed, if desired, by the creditor.

We do not intend, by what is here said, to intimate that the creditor is restricted to this course of proceeding, but merely as a suggestion of what appears to us to be the most practicable and efficacious means given by the statute, of coercing a dilatory guardian or administrator to the prompt discharge of his duty.

As any proceeding which may be hereafter had in this matter must come before a different tribunal, and will be regulated by a different law from that in force when the order was made from which this appeal is prosecuted, it is deemed unnecessary to comment at present upon other questions which have been discussed by counsel.

REVERSED AND REMANDED.