C. B. RIDDLE ET AL. V. S. BICKERSTAFF ET AL.

1. EVIDENCE—COPIES—PRACTICE.—Where certified copies of recorded instruments have been admitted over objections, the record must show that said copies were filed and three days' notice given. (Paschal's Dig., art. 3716.) In absence of evidence in the record that the statute was complied with, such admission will be held error.

2. OUTSTANDING TITLE AS DEFENSE.—It is error to instruct the jury, in an action of trespass to try title, that an outstanding superior title adverse to the plaintiff, to the land, or a title to the whole or part of the land in defendant, will defeat the right of plaintiff to recover, whether such title is vested in defendant or any other person. An outstanding title would defeat only to its extent.

3. LIMITATION.—See facts discussed as applying to the statute of limitations, and not constituting a defense.

4. INFANTS MAY SUE, &c.—LIMITATION.—Under section 14 of article 12 of the Constitution of 1869, minors had the right to sue for lands within seven years after the removal of the disability of minority.

APPEAL from Titus.   Tried below before the Hon. B. T. Estes.

The facts are fully stated in the opinion.

*Christian & McDonald,* for appellants.

No briefs on file for appellees.

BONNER, ASSOCIATE JUSTICE.—On the 15th day of February, 1873, the appellants, as plaintiffs below, Charles B. Riddle, Walter D. Riddle, and John L. Riddle, instituted suit in the usual form of trespass to try title against a number of defendants, including the appellees, Seaborn Bickerstaff, Cornelius Orvil, and John W. Withee.   Afterwards the suit was dismissed as to all the defendants, except the three above named, who claimed the particular land now in controversy by specified metes and bounds, the same being part of the survey for which the suit was originally instituted.

The plaintiffs deraigned title in their pleadings, and sustained the same by evidence, as follows:

1. Copy of patent to the heirs of Joseph P. Riddle, of date July 1, 1851, he having died in the year 1836.

2. Sole heirship of his mother, Marion Riddle.

3. Conveyance from Marion Riddle to Samuel S. Riddle, of date January 7, 1843.

4. Death of Samuel S. Riddle on the 26th of August, 1852, and heirship of plaintiffs as his only surviving children, they being minors at the time descent was cast by the death of their father.

The testimony showed that at the time of the institution of this suit John L. Riddle had been of full age for the period of one year nine months and twenty-six days; Charles

B. Riddle, three years eleven months and three days; and Walter D. Riddle, six years one month and eight days.

Under the law then in force, minors had seven years within which to institute suits for the recovery of property after the removal of the disability of non-age.

The defendants pleaded not guilty and the statute of limitations of three, five, and ten years.

On the trial below, the defendants offered in evidence—

1. Certified copy of deed of gift for the land in controversy, made by Henry Bickerstaff to Jonathan Owens, of date July 21, 1845, recorded July 3, 1851.

The record shows that this certified copy was filed in this suit March 21, 1877, but it does not appear that notice thereof was given to the plaintiffs.

2. Certified copy of deed from Jonathan Owens and his wife to Amanda Mayfield, now the wife of the defendant Orvil, of date March 10, 1853, recorded July 20, 1853.

The record does not show that this copy of deed was ever filed in the suit, or notice given that it would be offered in evidence; nor is it shown that any taxes were ever paid on the land. The testimony shows that Henry Bickerstaff had the land surveyed by virtue of the headright certificate of Joseph P. Riddle, and that he set up some claim to it, but what that claim was, and how it was evidenced, whether by writing or otherwise, is not disclosed. It was also in evidence that neither Henry Bickerstaff nor Jonathan Owens had ever lived on the survey of land in controversy, but that Henry Bickerstaff lived on another and a different Riddle survey, and that Owens lived on vacant land. It was shown that Martin Binion and John Stewart lived on the survey in controversy, and that they claimed under deeds from Henry Bickerstaff, but that they claimed particular portions of the same, and separated from the land in controversy; the defendant Bickerstaff himself testifying that "the line between the land in controversy and that owned by Binion and Stew-

art had been long run and established when he first came to the country, in 1848."

The testimony further disclosed that the first actual occupants of the land in controversy were the three defendants, who went into possession under the deed from Owens to Mayfield, they holding under and for Amanda Mayfield; the defendant Seaborn Bickerstaff, however, having no deed from her to the interest claimed by him. He testified that they settled upon the land in the latter part of the year 1853; but two other witnesses testified positively that it was in the latter part of the year 1854. Both these dates, however, are subsequent to that when descent was cast upon the plaintiffs, they then being minors, by the death of their father, Samuel S. Riddle, August 26, 1852.

Verdict and judgment were rendered for the defendants, motion for new trial overruled, and plaintiffs appealed.

The first error assigned is that the court erred in admitting the certified copies of deed from Henry Bickerstaff to Jonathan Owens, and from Jonathan Owens to Amanda Mayfield, to be read in evidence over the objections of the plaintiffs. As shown in the bill of exceptions, they were objected to for the reasons that the last-named copy had never been filed, and that no notice had been given to the plaintiffs that either would be offered in evidence. Neither in the bill of exceptions nor elsewhere in the record is it shown why these copies were thus admitted in evidence. If introduced under Paschal's Digest, art. 3716, it does not seem that the requisites of the same were complied with. As presented to us by the record, there was error in the admission of this testimony.

The second error assigned is to that part of the charge of the court in which the jury was instructed as follows:

"An outstanding superior title adverse to the plaintiffs to the land, or a title to the whole or part of the land in defendants, will defeat the right of plaintiffs to recover, whether such title is vested in defendants or any other persons."

We cannot assent to the proposition that an outstanding

superior title to a part of the land only, whether in the defendants or some other person, should defeat the plaintiff's recovery for that part of the land to which he may show a good title; and, besides, we are of opinion that the evidence, as developed in the record, did not warrant a charge upon the question of superior outstanding title. As this may have influenced the verdict of the jury, we think the error assigned well taken.

The other alleged errors may be grouped together, and are to the effect that the court erred in refusing to grant a new trial, because the verdict of the jury was contrary to the evidence and not supported by it, and was contrary to law and the charge of the court.

The testimony of the plaintiff having made out a complete chain of title from and under the sovereignty of the soil, and the defendants having failed to show a superior title thereunder, they must have recovered, if at all, by reason of the statute of limitations.

The defendants having neither title nor color of title, as defined by Paschal's Digest, art. 4622, providing for the three years' limitation, they could not avail themselves of this defense; and there being no evidence that they had paid taxes on the land, as required by Paschal's Digest, art. 4623, they could not claim the benefit of the statute of limitations of five years. Descent was cast upon the plaintiffs when minors, and before the adverse entry by the defendants; hence the right of action was not barred until the time prescribed by law within which the plaintiffs, as such minors, had the privilege to sue after the removal of their disability, which, under the law then in force, was the period of seven years. (Const. 1869, art. 12, sec. 14.)

At the time of the institution of this suit, the seven years had not elapsed as to either of the plaintiffs, so that neither the three, five, nor ten years' limitation could avail the defendants, and they were not entitled to a verdict and judgment on the defense of the statute of limitations. Hence the motion for a new trial should have been granted.

REVERSED AND REMANDED.