MATTIE TRAMMELL ET AL. v. A. C. NEAL.

(Case No. 858.)

1. RETURN OF MARRIED DAUGHTER DOES NOT RESTORE HER AS PART OF FAMILY — HOMESTEAD.— The return of a daughter, who has been married, and become a widow, to her mother's homestead, does not restore her as a part of the family. Roco v. Green, 50 Tex., 483.

2. HOMESTEAD — INHERITANCE — LIMITATION.— Upon the death of the widowed mother, her interest in the homestead descends to the daughter who has never married or left her mother, if such a daughter survives her, and is not subject to administration. A sale of the homestead by the administrator of the mother will pass no title thereto, though such a deed would form the basis of adverse possession, and, with payment of taxes, support the defense of five years' limitation. Pas. Dig., 1305; Green v. Crow, 17 Tex., 188; Reeves v. Petty, 44 Tex., 289; Horn v. Arnold, 52 Tex., 161.

3. LIMITATION.— The constitution of 1869 gave to married women seven years in which to sue after the removal of the disability of coverture, and where suit was instituted within that time limitation could not be asserted. Art. 12, sec. 19, Const. of 1869; Riddle v. Bickerstaff, 50 Tex., 159; French v. Strumberg, 52 Tex.; 92.

4. NOTICE — TITLE BY INHERITANCE.— The laws of registration do not apply to titles by inheritance, as they cannot be placed upon record, and a purchaser is bound to take notice of the relations of the parties through whom his title passes; especially so where all the parties reside in the immediate neighborhood where the conveyances are made.

Error from Rusk. Tried below before the Hon. A. J. Booty.

Plaintiffs in error, and one John Bell Gibson, a minor, brought suit against A. C. Neal, in the ordinary form of an action of trespass to try title, in the district court of Rusk county, November 18, 1875, for a tract of twenty-five acres of land adjoining the town of Henderson.

The defendant pleaded not guilty, limitation of three, five and ten years, and suggested improvements in good faith; also, that he was a *bona fide* purchaser without notice of plaintiffs' claim.

By amendments the plaintiffs set out their title as heirs of John Gibson and his wife Elizabeth, the said Mattie and Elonora being their children, and the minor, John Bell, their grandson, alleging that the land had been the homestead of the parents, and of the mother who survived her husband; that the claim of the defendant was asserted through an administrator's sale made by one Dunham, administrator of the estate of Elizabeth, in 1867, for the payment of alleged debts against her; that the administration proceedings were in fraud of the rights of the plaintiffs, and, as to the homestead attempted to be sold, were a nullity.

It was alleged that Mattie, in 1856, had intermarried with one James Trammell, who died prior to 1862, and that she, with two children, had returned to her mother's, and formed part of her family at her death, in 1864. That at her death Elonora and the minor John Bell also formed part of the family. The father had died in 1850. That in 1866 Mattie had leased the *homestead* to one Chas. Haden, and left Texas for Louisiana on business; had gone from thence to Alabama, thence to Georgia, and in 1870 had gone to New York the better to support and educate her children, with no intent to abandon the homestead. In replication it was alleged that Elonora had married James Mosely in 1866, and that Mosely died in 1870; that John Bell Gibson was a minor, and still was under age.

Dunham, the administrator, was made a party, and denied all the charges of fraud.

Neal, the defendant, by amendment, set out his title, being the proceedings in the administration resulting in the sale; the sale and deed by the administrator to Lewis; deed from Lewis to Morris; from Morris to Mrs. Ellen E. Gould, December 4, 1867, and from Gould and wife to defendant, March 24, 1875.

January 19, 1879, the case was tried, and judgment rendered for defendant for two-thirds of the land and improvements, and for the minor one-third. The plaintiffs, Mattie Trammell and Elonora, merely prosecuted writ of error.

The assignments of error are, so far as necessary to be noticed, the second, third, fourth, fifth and seventh, which question the action of the court in giving judgment under the plea of limitation for the defendant, and in admitting the administrator's deed in evidence, and in giving it force and effect. The seventh and eighth errors assigned do not affect the rights of the plaintiffs in error, and the first assignment is not well taken.

*Drury Field*, for plaintiffs in error.

*R. M. Wynne* and *Morris & Gould*, for defendant in error.

A. S. WALKER, J.— The application of the settled principles applied to estates, inheritance, homesteads and limitation to the facts in evidence affords a ready solution of the disputed points in this case.

We may treat the facts under two inquiries:

1st. Where, under the laws of descent, as modified by the homestead laws, is the title to this land? and

2d. What changes, if any, are made by limitation.

The testimony shows that early in 1850 John Gibson purchased the land of J. W. Flanagan, paying a part, and taking a title bond. (We think the testimony sufficiently identifies this purchase. The bond was lost, and its contents supplied by parol testimony.) Gibson began making preparations to move upon the land, and, pending the prep-

arations, died, and was buried on it. His wife Elizabeth at once moved upon the land; the remaining part of the purchase money was paid out of the assets of the estate of the husband. The family consisted of Elizabeth, the widow, and their children, all minors, Mattie, Elonora and a son. The designation by the deceased, the prompt occupation of the land as a homestead, attached that character to the land. It descended, then, one-half to the widow, Elizabeth, and one-sixth to each of the children; not to be partitioned while used by the family as homestead.

In 1856 Mattie intermarried with Trammell, and moved to a new home. This act severed her connection as a part of the family of which her mother was the head. Whitehead v. Nickelson, 48 Tex., 530; Roco v. Green, 50 Tex., 483.

The son also married, and with his wife moved to their home in Angelina county. There was then left the mother, Elizabeth Gibson, and her daughter Elonora, as the family.

Before 1862 Mrs. Mattie Trammell had become a widow, having two daughters by her marriage. In 1864, with her two children, she returned to her mother's, and was staying there. The son was in the Confederate service, and in 1864 his wife and infant son, John Bell, were also staying with the mother. This return to the old homestead, so far as the testimony shows, did not restore them as parts of the family. Roco v. Green, 50 Tex., 483.

In October, 1864, the mother died owing some debts, and having no other property but the homestead, and, we may presume, exempt household property, etc.

Upon her death her interest in the homestead descended to the daughter Elonora, who had never married nor left her mother. Pas. Dig., 1305; Green v. Crow, 17 Tex., 188; Reeves v. Petty, 44 Tex., 249; Horn v. Arnold, 52 Tex., 161.

If the homestead was community property upon the death of the mother, Elonora would have two-thirds interest, and Mrs. Trammell and the son one-sixth each. The son was killed nine days after his mother's death, and the plaintiff, John Bell, inherited his interest.

Inasmuch as the homestead character of the land, or that

part of it which had been owned by Mrs. Elizabeth Gibson, passed by the laws of descent (Pas. Dig., 1305) to the un-- married daughter — being the child — part of the family,— it was not subject to administration.

The sale, therefore, by the administrator passed no title as against Elonora, who owned it; nor could the sale affect the interests of herself, her sister Mattie, or of her nephew, in the land inherited from John Gibson on his death in 1850.

A result equally unfavorable to defendant Neal would follow should it be held that the land had been acquired by Mrs. Elizabeth Gibson, and was her separate property. In such case the daughter Elonora would take the whole interest.

As to the effect of limitation, Lewis, the purchaser at the administration sale, sold to W. W. Morris; Morris in 1867 to Mrs. Ellen E. Gould; she and her husband, March 24, 1875, to defendant Neal. Morris at his sale handed the keys to the house to Gould. Gould made valuable improvements on the land, and held possession until his sale to Neal, paying all taxes demanded. The deeds were all recorded. There was nothing in the deed from Morris to Mrs. Gould to prevent it from being the basis of adverse possession under the five years' statute of limitation.

The five years' adverse possession concluded Mrs. Mattie Trammell. It had no effect as to John Bell Gibson, who was a minor at the trial.

Elonora married in 1866, and left Texas for Louisiana. She became a widow in 1875. While Lewis, Morris and Gould had possession and were transferring the land, she was under coverture, and continued until her husband's death, which is said to have been in 1870. The constitution of 1869, which was the law at her husband's death, gave her seven years, after removal of coverture, to assert her right; until that length of time, title by adverse possession or limitation could not be asserted against her. This suit was brought November 18, 1875, within the seven years, and while that was the period of limitation required to bar the right of a married woman. Art. 12, sec. 19, Const. of 1869;

Riddle *v.* Bickerstaff, 50 Tex., 159; French *v.* Strumberg, 52 Tex., 92.

The title of plaintiffs, by inheritance, could not be placed on record. The laws of registration did not apply to their title. The chain of title exhibited by the defendant notified the parties through whom it passed sufficiently of the existence of the relation between John and Elizabeth Gibson, and that they had a family — descendants; at least sufficiently to put them upon notice. Besides, the facts could have been known, as while they were transpiring all the parties were residing in the immediate neighborhood.

The judgment below was not warranted by the testimony and should be reversed.

REVERSED AND REMANDED.

[Opinion delivered December 19, 1879.]