## MOORE v. MILLER et al.†

(Court of Civil Appeals of Texas. San Antonio. Feb. 19, 1913. On Motion for Rehearing, March 19, 1913.)

**1. EXECUTION (§ 256*) — FRAUD — CANCELLATION OF EXECUTION SALE.**

The fact that defendants were cited by publication and a number of lots were sold at an execution sale in bulk, as directly prohibited by Rev. Civ. St. 1911, art. 3753 (Sayles' Ann. Civ. St. 1897, art. 2362), and no notice was given of the sale, as required by Rev. Civ. St. 1911, art. 3757 (Sayles' Ann. Civ. St. 1897, art. 2366), taken in connection with gross inadequacy of price, are a sufficient basis for cancellation of the sale.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 723–733; Dec. Dig. § 256.*]

**2. EXECUTION (§ 256*)—SALE—SETTING ASIDE —INADEQUACY OF PRICE—EQUITY—TENDER OF INDEBTEDNESS.**

Where property has been sold at execution sale at a very inadequate price, a court of equity will set the sale aside, where defendant makes a prompt offer to pay the indebtedness, costs, and interest.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 723–733; Dec. Dig. § 256.*]

**3. TRIAL (§ 352*)—SPECIAL FINDINGS—JURY —FORM.**

The propounding of questions to the jury, "Do you find from the evidence," and "Do you, or do you not, find from the evidence," was not erroneous, since issues may be submitted in any form, so long as free from any indication on the part of the court as to how the issue should be determined; the rules as to questions to witnesses not being applicable to the submission of questions to a jury.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 840–842, 844, 845; Dec. Dig. § 352.*]

**4. EXECUTION (§ 256*)—ACTION TO SET ASIDE —FRAUD—ALLEGATIONS—SUFFICIENCY.**

Allegations that W. conceived the idea of conspiring with H. and instituting suit and attaching property, that H. co-operated by taking the affidavit of the publisher of the daily paper publishing the citation, and was co-operating, conspiring, and confederating with the said W. and M. for the purpose of clouding and destroying defendants' title to property, sufficiently charged conspiracy between the three, in an action attacking the validity of the sale.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 723–733; Dec. Dig. § 256.*]

**5. EXECUTION (§ 256*)—SETTING ASIDE SALE —ISSUES—INSTRUCTIONS.**

It would have been preposterous to have submitted an issue to the jury whether $138 was a fair and reasonable price for $20,000 worth of property sold at an execution sale, even though there were claims against it for $1,700 or $1,800.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 723–733; Dec. Dig. § 256.*]

**6. EXECUTION (§ 256*)—SALE—SETTING ASIDE —INADEQUACY OF PRICE—ELEMENTS TO CONSIDER.**

Where a constable sold a large number of lots at an execution sale, the fact that a party attempting to have the sale set aside only claimed a portion of them did not render it improper to consider the value of all the lots to arrive at a proper conclusion as to inadequacy of price.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 723–733; Dec. Dig. § 256.*]

**7. EXECUTION (§ 256*)—SETTING ASIDE SALE —OUTSTANDING TITLE.**

Where a party suing for land claimed under an execution sale does not prove his title, but the defendant on cross-action has the sale set aside, the mere fact that there were other parties claiming the property did not give plaintiff grounds for complaint.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 723–733; Dec. Dig. § 256.*]

**8. EXECUTION (§ 257*)—FRAUD IN SALE—SETTING ASIDE SALE—EFFECT.**

Where a party claiming a number of lots under an execution sale brought action against defendants for such lots, but the defendants claimed only a portion of them and prayed for cancellation of the constable's deed on the ground that the sale was fraudulent, and defendants prevailed, the plaintiff also lost all title to the lots not claimed by defendants.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 734, 735; Dec. Dig. § 257.*]

**9. APPEAL AND ERROR (§ 742*)—ASSIGNMENTS OF ERROR—STATEMENTS.**

An assignment which has no statement after the proposition, except a reference to a statement under some other assignment, will not be reviewed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

**10. APPEAL AND ERROR (§ 1073*)—HARMLESS ERROR—FORM OF JUDGMENT.**

Where a party was given a judgment for more land than he was entitled to, but disclaimed his right to such part as he was not entitled to, the other party was not prejudiced thereby.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4240–4247; Dec. Dig. § 1073.*]

**11. EQUITY (§ 88*)—LACHES.**

Laches or stale demand must be pleaded in order to avail a party invoking it.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 245, 395; Dec. Dig. § 88.*]

**12. EXECUTION (§ 256*)—SALE—ACTION TO SET ASIDE—LACHES.**

A party living out of the state and served by publication and having no legal notice of a sale under execution was excused from instituting a suit to have it set aside until several years later, when action was brought by the purchaser at such sale.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 723–733; Dec. Dig. § 256.*]

**13. EVIDENCE (§ 106*)—CONSPIRACY—CHARACTER EVIDENCE.**

Where an administrator was charged with conspiracy with plaintiff and another to fraudulently obtain land of the estate, evidence of a decree removing him and rendering judgment against him was admissible as tending to show his character, and that he would probably enter into a conspiracy, as alleged.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 177–187; Dec. Dig. § 106.*]

**14. APPEAL AND ERROR (§ 232*)—OBJECTIONS TO EVIDENCE—REVIEW.**

Where the only objection to evidence in the trial court was that it was irrelevant and

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes
† Writ of error denied by Supreme Court.

immaterial, no other objection can be considered on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1351, 1368, 1430, 1431; Dec. Dig. § 232.*]

**15. TRESPASS TO TRY TITLE (§ 35*)—ALLEGATIONS AND PROOF.**

In trespass to try title, where the land is claimed under a constable's sale, which defendant alleges to have been fraudulent on account of a conspiracy between the plaintiff and H., the administrator of an estate, and who was holding the land at the time, it was proper to allow proof that H. was an administrator.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 50–52; Dec. Dig. § 35.*]

**16. APPEAL AND ERROR (§ 742*)—ASSIGNMENTS OF ERROR—STATEMENTS.**

Assignments of error not followed by statements will not be considered, and an omnibus statement under assignments referring to diverse subjects of evidence does not meet the rules.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

**17. EXECUTION (§ 256*)—SALE—ACTION TO SET ASIDE—INADEQUACY OF PRICE—FRAUD—EVIDENCE.**

On a cross-action in trespass to try title to have a constable's sale, under which plaintiff was claiming, set aside on the ground of fraud and inadequacy of price, evidence that the plaintiff, who purchased at the sale, subsequently refused to accept the debt, interest, and costs was admissible to show bad faith.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 723–733; Dec. Dig. § 256.*]

**18. EXECUTION (§ 256*)—EXECUTION SALE—FRAUD—EVIDENCE.**

The affidavit of the publisher of a newspaper, taken before the administrator of an estate, half of which was the property of the party cited by publication, was admissible in evidence, in an action to set aside the execution sale, against the purchaser at the sale as tending to show fraud; such purchaser having been alleged to have been in conspiracy with such administrator.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 723–733; Dec. Dig. § 256.*]

*On Motion for Rehearing.*

**19. TIME (§ 9*)—EXCLUDING FIRST DAY—EXECUTION—NOTICE.**

The first publication of an execution sale of land should be full 20 days before the sale; the date of publication not being counted.

[Ed. Note.—For other cases, see Time, Cent. Dig. §§ 11–32; Dec. Dig. § 9.*]

**20. EXECUTION (§ 345*)—SALE—DEEDS—RETURN—CONFLICT—CONSTRUCTION.**

Where there is a conflict between a sheriff's deed and his return, the recitals in the deed always control.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 1044, 1045; Dec. Dig. § 345.*]

**21. EXECUTION (§ 258*)—SALE—COLLATERAL ATTACK.**

Where plaintiff brings trespass to try title, claiming under an execution sale, and defendants tender the amount of the judgment, but attempt to set aside the sale for fraud, such attempt is a direct, and not a collateral, attack upon the sale.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 736–739; Dec. Dig. § 258.*]

**22. JUSTICES OF THE PEACE (§ 128*)—JURISDICTION—JUDGMENT—SETTING ASIDE IN DISTRICT COURT.**

A suit to set aside a judgment of a justice of the peace in trespass to try title was properly brought in the district court.

[Ed. Note.—For other cases, see Justices of the Peace, Cent. Dig. §§ 402–407; Dec. Dig. § 128.*]

Appeal from District Court, Bexar County; Arthur W. Seeligson, Judge.

Action by H. J. Moore against M. B. Miller and others. Judgment for defendants, and plaintiff appeals. Affirmed.

W. W. Walling, James Routledge, and Frank H. Wash, all of San Antonio, for appellant. Ben P. Lane, F. C. Davis, and Webb & Goeth, all of San Antonio, for appellees.

FLY, C. J. The history of this case to a certain date is fully set forth in the opinion of this court found in Hallam v. Moore, 126 S. W. 908, in which a consolidation of this case with others was set aside and the district court ordered to try it separately from the others. In pursuance of that order the consolidation of the suits was canceled and appellant filed an amended petition, setting up a statutory action of trespass to try title to certain lots of land in the city of San Antonio as against Marie B. Miller and husband, Charles Miller, Annie H. Allardyce and husband, George Allardyce, and H. E. Barnard, Jr. Appellees pleaded not guilty and general denial, and set up a cross-action against appellant for the land, alleging that H. E. Barnard died on or about May 15, 1897, leaving a will in which he attempted to claim as his separate property a large portion of the community estate of himself and his wife, Annie H. Barnard, now Allardyce, and sought to dispose of said property by his will; that said Annie H. Allardyce successfully contested and nullified said attempt in said will; that Floyd McGown qualified as independent executor of said will, but resigned, and John T. Hambleton, on May 23, 1901, qualified as administrator of the estate with the will annexed, and took charge of the entire estate of H. E. Barnard, deceased, and converted the same to his own use and benefit; and the said Annie H. Allardyce instituted proceedings to remove him, but that during said administration W. W. Walling, an attorney for appellant, conspiring with the administrator, instituted a suit against her, and caused a writ of attachment to be levied on property in the hands of the administrator, and cited appellees, the Allardyces, by publication; that a judgment was obtained in the justice's court, and the property in controversy was sold under an execution issued out of said court, although in the hands of the administrator; the property was sold to appellant, who had full knowledge of all the facts, at a totally inadequate price; that it had been agreed by the con-

spirators that the constable should buy one or more of the lots, and said lots were purchased by the constable's wife, but were afterwards transferred to appellant; that property of the value of more than $10,000 was sold for $138, which was unconscionable. It was further alleged that all of the debt, principal, interest, and costs did not amount to $250, and that sum was tendered into court, and it was pleaded that if such sum should not be sufficient appellees were ready, willing, and able to pay any such sum found to be due. It was alleged that the administration of the estate had been closed and appellees became the owners of all the property, that in controversy being a portion of the same, and they prayed for the cancellation of the justice's court judgment and all proceedings thereunder. The cause was submitted to a jury upon special issues, and, upon the responses thereto, judgment was rendered in favor of appellees for the land, and that the writ of attachment issued by the justice's court be canceled, and that all sales made by the constable be set aside and his deeds held for naught; that $210 out of the $250 deposited in court be paid to appellant, and upon his receipt of the same the judgment of the justice's court be set aside and canceled; that appellant take nothing by his suit and pay all costs of the court.

Appellant claimed the land through a constable's deed, dated December 4, 1906, made by virtue of an execution from the justice's court of Bexar county, issued under a judgment in a cause styled W. W. Walling v. Annie H. Allardyce and George D. Allardyce; $138 having been bid for the property, which consisted of a large number of city lots in San Antonio. In response to questions by the court, the jury found that the reasonable market value of the property at the time it was sold was $21,500, and an undivided half of it was worth half that sum, that W. W. Walling, H. J. Moore, and John T. Hambleton colluded and conspired together to keep the property from bringing a fair and adequate price at the constable's sale; that the constable and his deputy were not parties to the conspiracy; that because of the collusion and conspiracy the property did not bring a fair and adequate price; that from all the evidence, excluding that as to collusion and conspiracy, the property did not bring a fair and adequate price. The answers were made after considering the fact that there was an attachment lien on the property for $1,500 sued out by another party, and that there was a sale of some of the lots under another justice's court judgment for $22. Upon those findings the court rendered judgment for appellees for 83½ lots of land in San Antonio, which are fully described, being the lots claimed by appellant by virtue of the constable's deed under execution in case of Walling v. Allardyce.

The assignments of error from 1 to 12, inclusive, complain of the insufficiency of the evidence to show any fraud or irregularity in the sale. The evidence showed that Walling, Moore, and the administrator of the estate, Hambleton, had offices in a building occupied by the San Antonio Light, a daily paper; that Moore was connected with the paper; that the Allardyces were cited by publication, the same being published in the Light; that Moore made an affidavit as to the publication before Hambleton, administrator, and also notary public, that Walling had a claim against Mrs. Allardyce, and, after he brought the suit against her, transferred the claim to Moore and acquired an interest in the land from Moore. He bought the land in for Moore. The latter was not indebted to Walling. Deeds were made by Moore for lots to Walling and other parties, but were not recorded. Walling expressed indifference as to what lots were taken by Moore, or whether they were worth $75 or $75,000. One deed was made to Mamie Wilkens, wife of the deputy constable, and one to the wife of Charles Stevens, the constable, one to Edwin Routledge, and one to A. G. Monroe, who was afterwards employed by the Light. Walling knew that the administration on the estate was pending, as did Moore. The price paid for the lots at the execution sale was not 1 per cent. of their value.

[1] The rule, as stated in Pearson v. Flanagan, 52 Tex. 280, is: "The weight of authority, including that of this court, is that mere inadequacy of price, of itself, is not sufficient to set aside a sheriff's sale otherwise valid; but the gross inadequacy of price, in connection with slight additional facts showing fraud, irregularity, or other circumstances calculated to prevent the property from bringing something like its reasonable value, might avoid the sale." This rule applies with particular force when the party who assisted in bringing about the circumstances is the buyer at the execution sale.

The rule is stated more strongly in Taul v. Wright, 45 Tex. 388, which is approved in House v. Robertson, 89 Tex. 681, 36 S. W. 251. In the former case the court said: "And if the judgment is valid, though it may be impossible to determine the precise limit at which mere inadequacy of price alone will authorize the setting aside a judicial sale, still it cannot be denied that there may be cases in which the price paid is so utterly insignificant and shockingly disproportionate to the value of the property that a court of equity cannot regard it as, in conscience, any consideration whatever, and the mere fact of attempting to hold property so purchased will be held conclusive evidence of fraud. Certainly, when there is an enormous inadequacy of price at a sheriff's sale, if there are but slight irregularities or other circumstances attending calculated to prevent the

property from bringing something like its reasonable value, it is regarded as unconscientious in the purchaser to hold the property so purchased, and his deed will be canceled." In the cited case of House v. Robertson the land was sold at $25, and was shown to be worth $800, and the court said: "It needs no argument to show that such a consideration for this property was enormously inadequate, and, while not sufficient of itself, perhaps, to authorize the court to set the sale aside, when taken in connection with the irregularities committed by the officers in issuing and executing the process, it must be held sufficiently inadequate to call upon a court of equity to interfere and protect the rights of the plaintiffs herein."

Not only did the plaintiff in the justice's court suit make the affidavit for citation by publication, but the manager and publisher of the San Antonio Daily Light swore to the publication of the citation before Hambleton, as notary public, who at that time was administrator of the Barnard estate, and the cause of action was transferred to appellant, who was also connected with the Light. No transfer of that cause of action or judgment appeared on the docket of the justice's court. Appellant did not testify at the trial, and his deeds to Mrs. Wilkens, Mrs. Stevens, and Edwin Routledge were acknowledged before Walling, as notary public. Not only were there the suspicious circumstances herein narrated, tending to show fraud, in evidence, but it appeared also that the lots were sold in bulk, in absolute defiance of the statute (article 3753, R. S. 1911; Sayles Stats. 2362), which requires that lots in any town or city shall be offered for sale separately; and it also appeared that no notice was given of the sale, as required by article 3757, R. S. 1911; Sayles Stats. 2366. Under a claim that the property was sacrificed, these omissions are considered, and, taken in connection with gross inadequacy of price, form a sufficient basis for cancellation of the sale under execution. Wilson v. Swasey (Sup.) 20 S. W. 48; Glasscock v. Price, 45 S. W. 415, affirmed on point in question, 92 Tex. 271, 47 S. W. 965; Moore v. Perry, 13 Tex. Civ. App. 204, 35 S. W. 838.

[2] Appellees tendered into court a sufficient sum to pay off the judgment of the justice's court, interest, and costs; and it has been held that where inadequacy of price stands alone, and the defendant makes a prompt offer to pay off the indebtedness, equity will set aside the sale. Martin v. Anderson, 4 Tex. Civ. App. 111, 23 S. W. 290; Steffens v. Jackson, 16 Tex. Civ. App. 280, 41 S. W. 520.

[3] The tenth and thirteenth assignments of error assail the form in which the issues were submitted; the contention being that, instead of the form being, "Do you find from the evidence," it should have been, "Do you, or do you not, find from the evidence." The assignments are without merit. The rules that apply in propounding questions to a witness cannot be applicable to the submission of special issues to a jury. In O'Farrell v. O'Farrell, 56 Tex. Civ. App. 51, 119 S. W. 899, it was held by this court: "We know of no principle of law, nor are we cited to any, which applies the rule inhibiting a leading question to a witness to the form of a question submitting a special issue to a jury; nor can we perceive any reason why such form of presenting an issue should be regarded erroneous. It is for the trial court, after determining what issues of fact should be presented, to determine the form of the question to be used in submitting them to the jury; and if the form of the question adopted is free from any indication on the part of the court as to how the issue should be determined, the action of the court as to such matter cannot be reviewed on appeal." That the jury in this case were not led by the form of the questions to answer them in a certain way is apparent from the fact that in answer to question 4, framed as the other three about the conspiracy, a negative answer was returned, while affirmative answers were returned to the other three.

[4] The allegations in the cross-action were sufficient to form a basis for the issue as to the conspiracy having been entered into among Walling, Moore, and Hambleton. It was alleged that Walling conceived the idea of conspiring with Hambleton and instituting suit and attaching property; that Hambleton co-operated in the affair by taking the affidavit of the publisher of the daily paper, and "was co-operating, conspiring, and confederating with the said W. W. Walling and the plaintiff, H. J. Moore, for the purpose of clouding and destroying the defendants' title to all the property belonging to the Barnard estate, and particularly that portion included in this suit and hereinbefore described." These allegations would be sufficient, but there are others full and explicit. Fraud and conspiracy are fully and clearly charged, and the fourteenth assignment of error is overruled.

[5, 6] It would have been preposterous to have submitted an issue to the jury of whether $138 was a fair and reasonable price for $20,000 worth of property, even though there might have been claims for $1,700 or $1,800 against it. The court submitted the question of the fair and reasonable market value of the land at the time of the sale under execution, and fully set out all the facts and circumstances to be considered in arriving at such value, and the court did not err in refusing the special charge of whose rejection complaint is made in the fifteenth assignment of error. It was proper to include the value of all the lots sold by the constable, in order to arrive at a proper conclusion

in regard to inadequacy of price, regardless of how many Moore had sold or the number for which he was suing.

Among a variety of issues discussed under the fifteenth assignment, to which it has no reference, is that of the questions to the jury being leading, and all the authorities cited are with reference to that point. None of them is applicable to the point sought to be raised.

The seventeenth assignment of error is without merit. The charge presented matters proper to be considered in arriving at the fair market value of the property.

The eighteenth, nineteenth, twentieth, and twenty-first assignments merely reiterate the point as to the questions to the jury being leading and have been disposed of hereinbefore. The twenty-second assignment is grouped with the foregoing, although appertaining to another and different matter, and it is overruled. The case of Railway v. Brown, 147 S. W. 1177, cited by appellant, does not sustain its contentions in regard to the form in which the issues were submitted.

[7] Appellees' cross-action was to set aside an execution sale of property on account of fraud and irregularities, and the question of outstanding title in Routledge or any one else could not avail appellant. Appellees sought to set aside an execution sale of their land and to remove cloud from their title, and when that was accomplished appellant had no title, and appellees rightfully recovered the land as between them and appellant, no matter who might be claiming the land. If they claimed it under and through the sale, the same vice entered into their title as in that of appellant. Appellant has no ground of complaint, because he failed to show title and could not recover any of the land sued for by appellees. If other parties have claims to some of the land, they are specially protected by the terms of the judgment. Appellant states he does not claim the lots about which he makes complaint in assignments 23 to 29, inclusive, and was not in possession of the same, and what ground of complaint he has is not apparent. His solicitude for Routledge or other claimants of lots is gratuitous, and he is not in a position to invoke the aid of the doctrine of outstanding title. Shields v. Hunt, 45 Tex. 424; Riddle v. Bickerstaff, 50 Tex. 155; Ford v. Ballard, 1 Tex. Civ. App. 376, 21 S. W. 146. It would be an absurdity to allow a party who set up no claim to land, and who is not in possession of it, to defeat another's claim by proving outstanding title in one who was being sued by the claimant for the identical land in another suit. The cross-action was instituted to set aside the sale of all the lots, and, if invalid as to any of them, it was invalid as to all that were sold.

[8] Appellant could only recover upon the strength of his title to the land he sued for,

and if he failed to show title to any of the land sold under the constable's sale he failed to show title to all of it; for if fraud vitiated the sale of one of the lots it vitiated the sale of all of them. The sale affected all of the property. The court properly refused to decree any of the lots to appellant, although appellees did not sue for them in their cross-action. The thirtieth assignment of error is therefore overruled. Appellees prayed for the cancellation of the constable's deed, and it was canceled, and thereby appellant was left without a shadow of title to any of the lots through that deed, whether claimed in the cross-action or not.

[9, 10] The thirty-second assignment of error attempts to raise a question as to certain lots bought by appellant from a party claiming under a constable's sale made by virtue of an execution in a case styled Green v. Allardyce. It is stated that the assignment is a proposition, but it is followed by the proposition that "where the evidence discloses that plaintiff, Moore, has a superior title to the lots mentioned, the defendant is not entitled to a judgment for the same." Appellees did not claim the lots mentioned in the assignment, and did not recover judgment for them. The only statement under the proposition is a reference to the transcript and to the statement, authorities, and argument under the twenty-third assignment of error. The statement thereunder comprises seven pages of the brief, and is in regard to points not involved in this assignment. This court is not called upon to cull the facts from that statement that may be pertinent to this assignment of error. The rules contemplate that each proposition shall be followed by a short statement of the facts pertinent to it. This is the rule, even where several assignments are grouped. Railway v. Smith, 24 Tex. Civ. App. 127, 57 S. W. 999. However, there being a virtual disclaimer by appellees as to all lots not claimed by them in their cross-action, and appellant not being injured by a failure to render judgment for him for the lots as to which the disclaimer was made, he was not in any manner injured by the omission in the judgment. Even the matter of costs, as to the lots which appellees did not claim, would have gone against them. Tate v. Wyatt, 77 Tex. 492, 14 S. W. 25.

[11, 12] Laches or stale demand must be pleaded in order to avail a party invoking it against his adversary, and appellant having filed no such plea the thirty-third assignment of error presenting that question is overruled. Hensel v. Kegans, 79 Tex. 347, 15 S. W. 275; Smith v. Perkins, 81 Tex. 152, 16 S. W. 805, 26 Am. St. Rep. 794. The circumstances, however, were sufficient to excuse appellees for not instituting their suit

sooner. They were nonresidents of the state and were cited by publication, and had no legal notice of the sale under execution.

The thirty-fourth and thirty-fifth assignments of error are overruled. The issue as to market value of the land was properly submitted to the jury, with all necessary instructions to guide them in arriving at a verdict.

[13, 14] The decree of the county court, removing Hambleton and rendering judgment against him and his surety, could not have injured appellant. However, the testimony was permissible as tending to show the character of the administrator, and that he would probably enter into a conspiracy to defraud the estate in his custody out of its property. The objection urged to the testimony was that it was irrelevant and immaterial, but appellant seeks to use other objections in this court; the main one being that it was prejudicial to appellant. He will be confined to his objections in the trial court.

[15] It was alleged that Hambleton was administrator of the Barnard estate, and it was proper to allow proof of the allegation.

[16] Assignments from 37 to 44, inclusive, are not followed by statements, and are overruled.

The forty-fifth assignment of error is not meritorious, and is overruled. The citation objected to could not in any way have affected the verdict or judgment, and the complaint raises a pure abstraction.

Assignments of errors 46 to 49, inclusive, are in regard to different kinds of documentary evidence, and neither is followed by propositions nor statements, as contemplated by the rules. An omnibus statement under assignments referring to diverse subjects of evidence does not meet the rules. McAllen v. Raphael, 96 S. W. 760; Cage v. Tucker, 25 Tex. Civ. App. 48, 60 S. W. 579.

[17] It was proper to allow Hambleton to testify that while administrator, several months after appellant bought the lots in controversy, he offered appellant the full amount of his debt, interest, and costs, and he refused it. It was permissible to prove this as an indication of bad faith on the part of appellant. When there is gross inadequacy of price, as said in Taul v. Wright, herein cited, "the mere fact of attempting to hold the property so purchased will be held conclusive evidence of fraud." The very fact that a man is willing to hold the property of another, for which he has paid a price that should shock the mind and conscience of any man disposed to apply, even in a limited way, the doctrine of the golden rule to his transactions with his fellows, should raise the presumption of fraud. The same matter was before the court through a tender into court of the full amount of the indebtedness, and it was

rejected—indubitable evidence that appellant was not endeavoring to collect what was due him, but was trying to get valuable property for a mere trifle.

[18] The affidavit of the publisher of the newspaper was taken before the administrator of an estate, one-half of which was the property of the woman being cited by publication, which, taken with other circumstances, tended to show fraud, not only on the part of Hambleton, but also of appellant.

The fifty-third assignment is not followed by proposition or statement, and is overruled. The so-called statement is an argument, and refers to the record for facts.

The judgment is affirmed.

### On Motion for Rehearing.

The statement in the opinion that appellant made the affidavit of publication was corrected in another portion of the opinion, when it was stated that the affidavit was made by the "manager and publisher of the Daily Light." Moore did not make it; but it is significant that when one of his associates on the paper desired to make an affidavit in regard to the publication that he should seek the administrator of the Barnard estate before whom to make it.

The return and the deed fail to show that the lots were sold separately. While the return gives the price of some of the lots, the deed indicates a sale in bulk. The return shows affirmatively that six lots in Lubbock and Campbell's addition were sold in bulk for $12.75.

[19] The return shows affirmatively that the first publication did not appear in the newspaper not less than 20 days before the sale of the property. The first publication appeared on November 14, 1906, and the sale occurred on December 4th. It is clear that the first publication did not appear full 20 days immediately preceding the day of sale. It would require the whole of the day of sale to make the 20 days required, because the day of the first publication is not computed. Exclusive of November 14th, there were 16 days in November, and it would require full 4 days in December to get the statutory time of "not less than twenty days immediately preceding the day of sale." Jackson v. Dowdy, 29 S. W. 693; Hill v. Faison, 27 Tex. 428; Simpson v. Mitchell, 47 Tex. 572; Stephenson v. Railroad, 42 Tex. 162. In the cited case of Hill v. Faison the first publication was on November 13th, the second, November 20th, and the third, November 27th, and judgment was rendered on December 4th. The similarity in dates to those in this case is remarkable. The court said: "In cases like the present the statute requires the citation to be published at least 3 successive weeks before the return day. We think this provision of the statute is not complied with by a publication in 3 successive issues of a

weekly newspaper, unless the full term of three weeks, or 21 days, elapses between the day when the citation is first published and the day on which the judgment is rendered, exclusive of the first day of publication and also of the return day of the writ." Applying that rule to this case and only 19 days had elapsed from the first publication to the day of the sale.

[20] Again, the constable's return recites the publication of the notice, but the deed recites only notice of sale by posting; and it is held that in a conflict between the sheriff's deed and his return the recitals in the deed always control. Holmes v. Buckner, 67 Tex. 107, 2 S. W. 452.

[21, 22] The attack upon the sale by appellees was a direct, and not a collateral, attack. They did not attack the judgment, but offered to pay it off, and they made a direct attack upon the sale under which appellant, who claimed to own the judgment, asserted title to the land. Weaver v. Nugent, 72 Tex. 272, 10 S. W. 458, 13 Am. St. Rep. 792; McCampbell v. Durst, 73 Tex. 410, 11 S. W. 380. The judgment having been rendered in a justice's court, the suit to set it aside was properly brought in the district court. Miller v. Koertge, 70 Tex. 162, 7 S. W. 691, 8 Am. St. Rep. 587.

In the cited case of Weaver v. Nugent, the purchaser at an execution sale instituted an action of trespass to try title to the land, and the judgment debtors set up the invalidity of the sale, arising from irregularities on the part of the sheriff. The land was worth from $3,000 to $6,000, and was purchased by the plaintiff for $10. The court held that the cross-action was a direct attack on the sale. The case of Taul v. Wright, cited in our original opinion, is quoted and approved, and it was said: "Where, as in this case, there is a practical confiscation of the property under the guise of an execution sale, it is likely the jury would scrutinize the testimony in an effort to account for the cause of such a sacrifice. Naturally, before allowing the plaintiff to hold the property without the payment of more than a nominal consideration, they would, under the charge, consider all the circumstances preceding and at the sale, the fact that no levy was pointed out by the county attorney, the haste in making the levy, the failure to demand payment or a levy, the fact that the defendants in execution did have some personal property in the county liable to seizure (much more than enough to satisfy the costs), the ignorance of the defendants in execution interested in the sale of the levy and of the sale; and the jury might reasonably have been satisfied, notwithstanding the deeds by the defendants in execution to their brother, that the gross inadequacy or absence of more than a nominal consideration was to a great extent occasioned by the irregularities. It may even be held in such a case the party holding should show an exact compliance with the law; that is, not deciding that the mere assertion of the claim is unconscientious, we hold that, where there is practically no consideration, the proceedings must at least be regular in order to pass title." In that case the plaintiff sought to excuse the miserable sum paid for the land on the ground that the true owners had conveyed it to another; in this case it is sought to be excused on the ground of debts owed by appellees. The Supreme Court disregarded the excuse in the case cited; we set it aside in this. A tender of the sum paid for the land was made in that case; a tender of the full amount of the judgment was made in this case. The court speaks of the haste in making the levy, but it could have been no greater than in this case. The judgment was obtained by appellant on September 4, 1906, and an execution was issued on November 12th, on the same day the levy was made, and on December 4th the sale was attempted. Taken with the evidences of fraud, the irregularities connected with the sale, the gross inadequacy of price, the refusal of the tender of the full amount of the judgment, this case is a much stronger one for setting aside the sale than the case of Weaver v. Nugent. See, also, Irvin v. Ferguson, 83 Tex. 496, 18 S. W. 820; Crosby v. Bannowsky, 95 Tex. 449, 68 S. W. 47.

The case of McCampbell v. Durst, herein cited, is authority for the proposition that the cross-action of these appellees was a direct, and not a collateral, action. The court said: "The obvious purpose of this suit was to cancel the deeds which were executed in pursuance of the proceedings in the probate court, and to remove from plaintiff's title the cloud cast thereon by the deeds or any other claim of appellant to the land. These proceedings in the probate court and every order and decree relating to the land in controversy are specifically set out in the petition, and it is averred of each and all of them that they are fraudulent and void. These proceedings constitute a part of appellant's claim and eventuated in the deeds, against both of which relief is directly sought by this suit. We think the suit is not collateral, but a direct proceeding to vacate the deeds, which may be done if the facts alleged be true, although the orders in probate stand." To the same effect are Ayres v. Duprey, 27 Tex. 593, 86 Am. Dec. 657; Chamblee v. Tarbox, 27 Tex. 139, 84 Am. Dec. 614; Owen v. Navasota, 44 Tex. 517; Cravens v. Wilson, 48 Tex. 324, and Moore v. Snowball, 36 Tex. Civ. App. 495, 82 S. W. 330; same case, 98 Tex. 16, 81 S. W. 5, 66 L. R. A. 745, 107 Am. St. Rep. 596. In the last-cited case the Supreme Court held: "A defendant, when sued in trespass to try title, may plead not guilty, thus making the issue of title, and may also plead specially such a right as that which plaintiffs here set up; but when he does so

he, in substance, asserts in reconvention a different cause of action against the plaintiff from that which plaintiff asserts against him."

In the case of Leeper v. O'Donohue, 18 Tex. Civ. App. 531, 45 S. W. 327, the notice of sale was not given 20 days before the sale, and it was held "that the inadequacy of the price at which the property was bid in, coupled with the failure to give 20 days' notice of the sale to the defendants, was sufficient to require that the sale should be vacated." A writ of error was refused by the Supreme Court.

The cases cited by appellant as holding that an attack by a cross-action of a sale under execution in a suit between the execution purchaser and the defendants in execution is a collateral attack do not so hold. In the case of Smith v. Perkins, 81 Tex. 152, 16 S. W. 805, 26 Am. St. Rep. 794, it was held that the attack was collateral because all persons concerned were not made parties, and it is held that if they had been the cross-action would have been a direct attack on the sale. In this case the owner of the judgment, the only party interested, besides the defendants in the original suit, were parties. The case of Brooks v. Powell, 29 S. W. 809, is based on the same proposition. The case of Estey v. Williams, 133 S. W. 470, cited by appellant, has no applicability to this case. In this case the cause of action was assigned to appellant by Walling nearly two years before the judgment was obtained, and appellant was the real plaintiff in the justice's court of Walling v. Allardyce.

While we conclude that the assignments seeking to raise a question as to lots not claimed by appellees, and for which they did not obtain judgment, should not be considered, still this court adjudges that appellees take nothing as to any lots except those claimed in their cross-action, and with this amendment of our former judgment the motion for rehearing is overruled.