FANNIE SMITH ET AL. v. J. S. PERKINS ET AL.

No. 6762.

1. **A Justice of the Peace may Buy Land at Sale Under Execution Issued by Him.**—We have been unable to find any provision of law, nor has any been cited, that forbids a justice of the peace from purchasing property sold at public vendue under execution issued by him in a suit tried by him. Such purchase is not void, nor even voidable.

2. **Proceedings to Avoid Execution Sale of Land.**—Where land is sold under execution issuing from a Justice Court and such sale is voidable it seems that proceedings to avoid such sale after the deed has been made, for fraud, would have to be taken in the District Court of the county where the land is situated. The Justice Court could have no jurisdiction by motion or on original proceeding for that purpose after the execution of the deed.

3. **Execution for Costs.**—An execution for costs is properly issued in name of the party recovering costs. It should not be issued in name of the officers entitled to the costs.

4. **Inadequacy of Price.**—Gross inadequacy of price alone is not ground for avoiding a judicial sale, although strongly indicative of fraud.

5. **Collateral Attack.**—Plaintiffs in trespass to try title held land by deed from a purchaser of it at execution sale. The defendants in possession in reconvention pleaded that they held by deed from the heirs of the defendant in the execution, and set up facts as avoiding the sale, tendering the purchase money and interest. The plea was made more than ten years after the sale. No other parties were made or asked to be made. *Held*, that the plea in reconvention could not be considered as a direct at-

tack, but only collateral, and that matters in avoidance of the sale would not avail as a defense, or as grounds for recovery by the defendants, the sale not being void.

6. **Stale Demand — Periods of Limitation.** — Stale demand must be pleaded; and it seems that where the attack is not upon the judgment itself, but only upon the subsequent proceedings taken in making the sale, that ten years would be allowed within which proceedings might be taken; but if the attack is against the judgment only two years would be allowed.

APPEAL from Montague. Tried below before Hon. F. E. Piner. The opinion states the case.

*Stephens & Herbert* and *Sparks & Smith*, for appellants.—1. If a justice of the peace buy a tract of land at sheriff's sale made under and by virtue of judgment rendered and execution issued by such justice, such sale is not void but voidable only, and the same can not be attacked collaterally, but is valid until reversed or set aside by appeal or by direct action brought against the proper parties at the proper time for that purpose. Murchison v. White, 54 Texas, 85; Ayers v. Duprey, 27 Texas, 594; Boggess v. Howard, 40 Texas, 157; Owens v. City of Navasota, 44 Texas, 517; Williams v. Ball, 52 Texas, 603; Hancock v. Metz, 15 Texas, 205; Freem. on Ex., sec. 43.

2. If a defendant in execution whose land has been seized and sold by the sheriff has acquiesced in such sale for the period of two years, and until the rights of third parties have attached, he and his heirs and assigns are estopped from questioning the validity of such sale by reason of the irregularities in rendering judgment, issuing and levying execution, and making sale by the sheriff under such execution. Murchison v. White, 54 Texas, 85; Fitch v. Boyer, 51 Texas, 337; Hancock v. Metz, 15 Texas, 206; Freem. on Ex., sec., 43; Allen v. Pierson, 60 Texas, 604.

3. Inadequacy of price paid for land at sheriff's sale is an objection which can be made only by the injured party, who is defendant in execution; and persons claiming as subsequent purchasers with notice can not be heard to urge this objection. Hawley v. Bullock, 29 Texas, 218; Taylor v. Snow, 47 Texas, 463; Allen v. Pierson, 60 Texas, 604.

*Jameson & Chambers* and *Davis & Harris*, for appellees.—1. The purchaser at the execution sale being the justice of the peace who issued the execution and before whom the judgment was rendered, the sale is void and the court could not have rendered a judgment other than for appellees. Freem. on Void Judicial Sales, sec. 33; West v. Waddell, 33 Ark., 575; Livingston v. Cochran, 33 Ark., 294.

2. The execution in the name of Watson being for the cost only, and not for the principal debt and cost, is illegal and void. Pasch. Dig., arts. 3062, 6351; West v. Waddell, 33 Ark., 575.

MARR, JUDGE, *Section A.*—On March 14, 1887, appellants Fannie B. Smith and W. McB. Smith filed this suit in the District Court of Montague County to recover of appellees J. S. and Martha Perkins 220 acres of land out of the S. & M. G. Railway Company Survey No. 1, situated in Montague County, Texas, and for $1000 damage. The appellees pleaded not guilty, and in reconvention that they were in possession and owners of the land sued for by a regular chain of title from the heirs of E. J. Jones, deceased, to appellee M. C. Perkins, the wife of J. S. Perkins; that appellants had a fraudulent, void, and pretended claim to the land, and that plaintiffs claimed the land under judgment rendered in a Justice Court of Clay County, Texas, by J. K. Bass, justice of the peace, October 24, 1877, in favor of Wm. Watson v. E. J. Jones for $32.70 and costs; that execution issued upon said judgment and was levied upon 440 acres of land, of which the land in controversy is a part; that sale was made thereunder the first Tuesday in May, 1878, when said 440 acres was bid in by J. K. Bass for the sum of $5; that at date of sale the land in controversy was worth $500; that the execution under which sale was made was void, because issued by Bass for his own and other costs and for payment of the principal judgment; and further, because said land levied on was pointed out and purchased by Bass while he acted as justice of the peace; that appellants through their chain of title had notice of such facts; that Jones, under whom both parties claim, died intestate in the year 1879. The appellees pleaded further, that said execution was void because issued in name of plaintiff in said suit instead of in name of officers of the court, praying for affirmative judgment against appellants and removing cloud from title. They also tendered in court the amount of Bass' bid ($5), with interest. Appellants and appellees both claimed the land in controversy through E. J. Jones as common source. The case was tried before the court, a jury being waived, which resulted in a judgment against appellants in favor of appellees for all costs incurred in the prosecution of the suit, and judgment in favor of appellees for recovery of the land in controversy, canceling sale of the 440 acres of land sold by the sheriff to Bass, and the deed made to Bass by the sheriff, from which judgment the appellants by appeal bring said cause to this court for review.

The matters of fact set forth in the above plea in reconvention of the defendants were proved, and the court below held the execution sale and sheriff's deed to be void, but upon what precise ground does not appear, as there are no conclusions of law and fact in the record. The defendant also pleaded that the execution and sale were irregular and void, because the writ of execution was issued to the county of Montague before any had been issued to Clay County, where the judgment was rendered.

But if this is of any importance under the circumstances in which the question is now raised and presented, we are of the opinion that the point is not sustained by the record. As we understand from the statement of facts an execution was issued to Clay County November 10, 1877, "returned no property," and thereafter on March 18, 1878, another writ was issued to the sheriff of Montague County, under which the land was sold on the first Tuesday in May of that year. Were it otherwise, we are of the opinion that it would have been at most but an irregularity insufficient to render the sale void. It was admitted that the appellants purchased the land sued for and a part of the land sold at said sheriff's sale from the purchaser thereat, J. K. Bass, and that the sheriff's deeds and the deeds to appellants were duly recorded prior to any right or title to the land acquired by appellees. It was also admitted that appellees claim title to the land by deeds executed October 12, 1885, from the sole surviving heirs at law of said E. J. Jones, the defendant in the execution, and that the appellees "were in possession of the land in controversy at the date of the filing of this suit." It was further conceded that plaintiffs' vendor, J. K. Bass, the justice of the peace who rendered the original judgment and issued the execution, was identical with the J. K. Bass who purchased the land under the execution at the sheriff's sale, but there is no admission that plaintiffs were actually advised or cognizant of that fact. In the view we take of the case it is unimportant to determine whether the similarity of the name in all of the proceedings in plaintiffs' chain of title was sufficient to give them notice of the identity of the person. The appellants' assignments of error present the following propositions so far as need be noticed, viz.: (1) that the court erred in holding that the execution sale and sheriff's deed thereunder were void, or even voidable; (2) that if voidable only, the defendants should not have been allowed to impeach them in this suit, because the attack upon them is not made in any direct mode recognized by law but is collateral only, and because no attack thereupon was made by any party at interest within the time allowed by law. It does not appear that E. J. Jones or any one else ever instituted any proceedings whatever to vacate or set aside the execution, the sale of the land, or the sheriff's deed thereunder, or objected to the same in any court before the plaintiffs instituted this suit. The first attack, therefore, upon these proceedings was made by the appellees in their above plea in reconvention, which was filed on the 2d day of October, 1888, more than ten years in fact after the sale of the land by the sheriff of Montague County to J. K. Bass, Esq. It is apparent from the statement of the case that if the execution and sale of the land to said Bass are void the judgment below should be affirmed, because in that contingency these proceedings would be ineffectual to pass the legal title, which would of course have remained in the execution debtor C. J. Jones, and at his death descended to his heirs at law, and as a

consequence the defendants, having acquired that title and there being no such adverse possession as would sustain limitation, could not only attack these proceedings collaterally but would be entitled to the land on account of the inherent strength of their own title. But we are unable to perceive any reason for holding these proceedings absolutely null and void. If the court below so held because Bass was the purchaser at the execution sale, then we think the court erred in that respect. Nay, more; we doubt if that fact would even render the proceedings voidable. We have been unable to find any provision of law, nor has any been cited, that forbids a justice of the peace from purchasing property sold at public vendue on an execution issued by him in a suit tried by him. There is manifest indelicacy and impropriety in the act, yet we can not find that it is in contravention of any law. If that officer had been required by law to make the sale or to see to its regularity or to confirm it afterward the case might and probably would be very different, as for example a purchase by a probate judge at an administrator's sale ordered by him. Livingston v. Cochran, 33 Ark., 294. But none of these duties were imposed by law upon the justice of the peace. After the judgment rendered by him became final by the lapse of the time in which he could grant a new trial the matter was no longer under his control. The subsequent acts of issuing execution and taxing costs, etc., were purely ministerial. By virtue of his office he had no control over the sale or the terms thereof. When the sale is completed and the deed delivered by the sheriff the title to the land ordinarily in such cases vests in the purchaser, independent of and without any further act of the justice of the peace or of his court.

But it is contended that a motion to set aside the sale for fraud or irregularities could have been made in his court, and that he thus disqualified himself from sitting in the trial of the motion. If this view is correct we do not know that this would have made the sale void, but we do not believe that the position can be successfully maintained that a court of a justice of the peace has jurisdiction to entertain a motion and set aside an execution sale of land after it has been completed and deed delivered to the purchaser. We have already said that the effect of such sale is to vest the title to the land in the purchaser if the sale is regular or only voidable. A proceeding having for its object the destruction of all the evidences of that title as well as the annulment of the title itself would be practically a suit to try title to land or remove cloud therefrom, or at least, when the ground of the motion is fraud and gross inadequacy of price, would be an appeal to the equity powers and jurisdiction of the court. Of such proceedings, whether by motion or original suit, we do not believe that Justice Courts have jurisdiction. They have never been regarded as "high courts of chancery," nor allowed in this State to try title to land or remove cloud from title thereto. In such cases resort must be had to the District Court of the

county where the land is situated.   Const. 1875, art. 5, sec. 8; Id., art. 1198, sec. 13; Hickman v. Stone, 5 S. W. Rep., 835, and authorities cited.

We conclude that the sale of the land to J. K. Bass was not void for that reason, nor is there any other sufficient reason shown that would render it void.   Was it even voidable?   The only other irregularity alleged is that the execution for costs was issued in the names of the parties to the suit instead of the names of the officers in whose favor the costs were adjudged.   This was proper, and was not even an irregularity.   Freem. on Ex., sec. 21; Hudson v. Morriss, 55 Texas, 604. It will be presumed that the execution was issued with the consent of the plaintiff unless the contrary is shown.   Id.   Nothing is therefore left the defendants to avoid the sale but the gross inadequacy of the price bid and paid by Bass for the land.   That *alone* has been repeatedly held insufficient to vacate the sale even on direct attack, though it may be regarded as strongly indicative of fraud.   12 Am. and Eng. Encyc. of Law, 235–238; Allen v. Pierson, 60 Texas, 604; Pearson v. Flanagan, 52 Texas, 280; Id., 361.   But if we concede that the sale was voidable on the ground of fraud implied from gross inadequacy of price, etc., still we think the attack made upon it by the appellees in their plea in reconvention was collateral and ought not to have been sustained in the court below.   We can not regard that plea as an original suit or equitable proceeding instituted directly and for the sole purpose of vacating the execution sale and sheriff's deed on the ground of fraud, to which all of the parties in interest should be made parties to the suit, though expressions of opinion may be found to that effect in some of the cases reported.   Such a proceeding would be a direct attack.   Freem. on Ex., sec. 310.   All those interested in the sale of the land or to be affected by the vacating of the proceedings were not made or asked to be made parties to the suit in defendants' cross-bill.   Neither the plaintiff in the execution nor the purchaser Bass was impleaded, though the sale of the entire 440 acres was declared void.   Freem. on Ex., secs. 305, 306.   The plaintiffs had instituted this suit as one of ejectment or trespass to try title, and that is its real character.   The defendants attempted by their cross-bill (which is in effect an independent suit) to set aside and annul certain process and the proceedings thereunder emanating from another court.   The plea of reconvention is therefore not only collateral to the present suit, but is also a collateral proceeding in so far as it seeks to invalidate and set aside the proceedings taken in pursuance of the judgment and process of the Justice Court.   The proper and direct remedy, supposing them to have the same right as Jones had, would have been by motion or original suit in the proper court having jurisdiction of such matters.   Their actual possession of the land did not alter the case.   Haskins v. Walet, 63 Texas, 218; Freem. on Ex., sec. 310; Owen v. Navasota, 44 Texas, 517; 68 Texas,

423.    In the case of Haskins v. Walet, supra, it is said that "if we regard the present action as an action at law merely (trespass to try title), then the plaintiff can not recover unless the sheriff's deed under which the defendants claim is absolutely void.    If it be merely voidable the court will not disregard it in a collateral proceeding."    This is a correct statement of the rule, though made in a case where the attack appears to have been direct.    Murchison v. White, 54 Texas, 85; Freem. on Ex., secs. 351, 310, 309, 29, 339; Ayres v. Duprey, 27 Texas, 593; Boggess v. Howard, 40 Texas, 158.

The judgment therefore rendered in the court below is incorrect and should be reversed and rendered as requested by the appellants.    This renders it unnecessary to make any authoritative ruling on the question of laches, which has been discussed by both parties, though it does not appear that the appellants interposed this defense in any way in the court below.    This it seems they should have done in some mode to be entitled to the benefit of the plea of laches or of stale demand. Hensel v. Kegan, 79 Texas, 347; Bullock v. Smith, 72 Texas, 549. We are relieved also of deciding whether a proper proceeding to set aside a sale under execution and sheriff's deed to land on the ground of irregularities and inadequacy of price must be brought within two years, as contended by appellants, or within ten years, supposing of course that the subsequent purchaser has notice of the fraud and irregularities.    It would seem that where the attack is not upon the judgment itself, but only upon the subsequent proceedings eventuating in the sale of the land, the longer period has been allowed for a direct proceeding in equity, otherwise if the judgment is sought to be reviewed and set aside, and as a consequence the subsequent proceedings thereunder.    Murchison v. White, supra; Kleincke v. Woodward, 42 Texas, 311; Walet v. Haskins, 68 Texas, 418.    Deducting one year on account of the death of E. J. Jones in 1879 (there being no executor or administrator of his estate), less than ten years had intervened in legal contemplation between the date of the sale of the land and the filing of defendant's plea in reconvention.    Rev. Stats., art. 3217.

For the other reasons assigned we conclude that the judgment should be reversed and here rendered for the appellants, so as to allow them to recover of the appellees the 220 acres of land described in plaintiffs' petition, and all costs of this appeal and those that have accrued in the District Court.

*Reversed and remanded.*

Adopted May 10, 1891; and on June 23, 1891, on motion of appellees, the judgment was so changed as to reverse the judgment and remand the cause for further proceedings.

*Davis & Harris* argued a motion for rehearing.