ZEISS v. FIRST STATE BANK et al.*
(No. 63.)

(Court of Civil Appeals of Texas. Beaumont.
Oct. 26, 1916. Rehearing Denied
Nov. 23, 1916.)

1. MORTGAGES ☞209—TRUSTEES—DUTY OF.

A trustee in a deed of trust becomes the special agent of both parties, and must act with absolute impartiality and fairness.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 466–468; Dec. Dig. ☞209.]

2. MORTGAGES ☞369(3) — FORECLOSURE — SALES—VACATION.

A sale by a trustee to foreclose a deed of trust will be set aside if there is proof of undue advantage.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 1094; Dec. Dig. ☞369(3).]

3. MORTGAGES ☞360 — FORECLOSURE — AUTHORITY OF TRUSTEE.

In making a sale under a deed of trust, the trustee must abide by and comply with the terms of the deed, but incidental matters outside of its terms are left to his discretion.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 692; Dec. Dig. ☞360.]

4. MORTGAGES ☞369(7)—FORECLOSURE—VACATION—BURDEN OF PROOF.

The grantor in a deed of trust who sues to set aside a sale made by the trustee has the burden of proving that the trustee abused his discretion, acted unfairly, or took undue advantage of him.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 1097, 1098; Dec. Dig. ☞369(7).]

5. MORTGAGES ☞369(2)—FORECLOSURE—VACATION.

A deed of trust authorizing sale by the trustee in case of nonpayment of the note secured did not give the grantor the right to be present at the sale or make it incumbent on the trustee to postpone the sale until he could arrive. Nevertheless the trustee notified the grantor of the date of the sale, and shortly before the sale the trustee was requested to postpone it until after 10:40, so that the grantor could arrive. Anticipating an effort to enjoin the sale, the trustee refused to delay, and the property was sold a few minutes before the grantor arrived. The price was somewhat inadequate, but there was no showing that the grantor would have made a higher bid, or that he had the power to protect his interests. *Held*, in view of the fact that the grantor was involved, and had stated that he could not even pay the interest, and the sale was in all respects regular, it will not be set aside on account of inadequacy of price coupled with the refusal of the trustee to delay until the grantor could arrive.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 1094; Dec. Dig. ☞369(2).]

Appeal from District Court, Liberty County; J. Llewellyn, Judge.

Action by George P. Zeiss against the First State Bank and another. On plaintiff's death the action was revived by his administrator, A. W. Umland. From a judgment for defendants, plaintiff appeals. Affirmed.

Stevens & Stevens, of Houston, for appellant. E. B. Pickett, Jr., of Liberty, for appellees.

BROOKE, J. This suit was instituted in the district court of Liberty county, Tex., by George P. Zeiss, as plaintiff, against the First State Bank of Liberty, J. F. Richardson, and Wirt Davis as defendants. George P. Zeiss having died about the 8th day of August, 1914, his administrator, A. W. Umland, made himself a party plaintiff, by appropriate pleadings, and proceeded to prosecute the suit. This action was instituted for the purpose of setting aside a sale under a certain deed of trust, which was executed by George P. Zeiss and another to secure the First State Bank in the sum of $5,000. J. F. Richardson was the trustee named in the deed of trust.

The case was tried before the court without a jury, and verdict and judgment rendered in favor of the defendants. The defendant Wirt Davis having filed a cross-action against the plaintiff, judgment was also rendered in favor of the said Wirt Davis upon his cross-action against the plaintiff for the land in controversy. A. W. Umland, administrator, by order of the court, was permitted to prosecute the suit. The said A. W. Umland, administrator of the estate of George P. Zeiss, deceased, has appealed from the judgment of the district court.

It might be well to say also that the deed of trust in question was made by George P. Zeiss and another on February 15, 1913, to secure a note for $5,000, due 90 days thereafter, with interest at 10 per cent. The note was not met at maturity, nor was any interest ever paid on it. A sale by the trustee was not made until April 7, 1914. The land was bid in by the appellee Wirt Davis, but the trustee made the deed to the First State Bank, and then the bank deeded same to Davis, and, while said bank was named as a payee in the deed, and as the beneficiary in the deed of trust, the appellee Wirt Davis in fact furnished the money which was loaned Zeiss.

Appellant assails the action of the lower court in rendering judgment for the defendants for the reason that he says the proof of the case having shown that on the day of the alleged sale by the trustee, before 10 o'clock a. m., the said trustee, J. F. Richardson, and parties representing the beneficiary in the deed of trust were requested by George P. Zeiss and his attorneys not to sell the land until the said Zeiss could arrive at Liberty on a train which reached that place at 10:30 a. m. standard time, April 7, 1914, and that said trustee and the defendants unduly hastened the sale of said land, in order to make the same before the said George P. Zeiss could be present, and the evidence having further shown that the trustee and the defendants declined to inform the agents and attorneys of said Zeiss when said sale would take place, and the evidence having further shown that the said trustee, according to his own testimony, was acting solely as the agent of Wirt Davis and the First State Bank, and that he abused his duties as a trustee in not

affording the said Zeiss an opportunity to be present at said sale; and the evidence having further shown that the land was sold to the said Wirt Davis for the sum of $1,700, when it was, at the time of said sale, in cash worth not less than $4,000, and there being some question as to whether or not the said sale took place within the hours prescribed by law, solar time, hence the court erred in rendering judgment for the defendants, and a new trial should be granted.

[1, 2] The first proposition urged is that the trustee in the deed of trust becomes the special agent of both parties, and must act with absolute impartiality and with fairness to all parties concerned. The second proposition is that a sale for an inadequate price by a trustee will be set aside if there is proof of undue advantage. We think the propositions are correct legal propositions, and we are constrained to inquire whether any undue and unfair advantage was obtained over the appellant in making said sale. However, we are confronted at the outset with the judgment of the court, in which these issues are determined against the appellant.

[3-5] It is also true that in making a sale under a deed of trust the trustee must abide by and comply with the terms of the deed, but incidental matters outside of its terms are left to his discretion, and that the grantor in the deed of trust, who sues to set aside the sale made by the trustee, has the burden of proving that the trustee abused his discretion by acting unfairly with, or has taken some undue advantage of him, and that thereby he has suffered material injury. No proof was submitted that the slightest loss was suffered on account of any act of the trustee, and the attack is based on the fact that the sale was not deferred or postponed until George P. Zeiss could be present and attend the same. However, there is no testimony that the said Zeiss, if in fact present, could or would have bid and paid for the land a sum greater than the land really brought under the trustee's sale. The deed of trust provides as follows:

"The State of Texas, County of Liberty.

· "Know all men by these presents: That I, George P. Zeiss, of Houston, in the county of Harris, and state of Texas, for and in consideration of the sum of one dollar to me cash in hand paid by J. F. Richardson, of Liberty county, in the state of Texas, trustee, the receipt whereof is hereby acknowledged, and in further consideration of the debt and trust hereinafter mentioned, have granted, sold, and conveyed, and by these presents do grant, sell, and convey, unto the said J. F. Richardson, trustee, and to his successor or substitute in this trust, and to his and their assigns forever, all and singular the following described property situated, lying, and being in the county of Liberty and state of Texas, viz.: Parts of the Jacob E. Self headright league described as follows: [Description of land by metes and bounds.]

"To have and to hold the herein described premises, together with all and singular the rights and appurtenances thereto in any wise belonging, unto the said J. F. Richardson, trustee, and I do hereby bind myself, my heirs, executors, and administrators to warrant and forever defend all and singular the said premises unto the said J. F. Richardson, trustee, to his successor or substitute, and to his and their assigns forever, against any person whomsoever lawfully claiming or to claim the same or any part thereof, in trust, however, for the following purposes and upon the following conditions, viz.: If the said George P. Zeiss shall well and truly pay off and discharge at the maturity thereof, according to the tenor and effect thereof, one certain promissory note made by George P. Zeiss and W. J. Zeiss payable to the order of the First State Bank of Liberty and described as follows: [Here follows note for $5,000, dated 2/15/1913, and due 90 days after date, signed by Geo. P. Zeiss and W. J. Zeiss]—with interest thereon from maturity until paid at the rate of 10 per cent. per annum, said interest payable as it accrues at the office of said bank, then this conveyance shall become null and void, and these presents shall be released in due form at my expense. But in case of default or failure to observe and keep any of the covenants hereof by the grantors herein, then and in that event the said trustee is hereby authorized and empowered, and it shall be his special duty, at the request of the payee or any holder of any of the above-described notes, to sell the above-described property to the highest bidder for cash at the courthouse door of the county in which said property or any part thereof is situated, at public outcry, between the hours of 10 o'clock a. m. and 4 o'clock p. m. on the first Tuesday in any month, after having given notice of such sale by posting up written or printed notices at three public places in said county of Liberty and state of Texas, and all of which said notices shall have been posted for at least twenty days next before the day of sale, and after such sale to make the purchaser or purchasers hereunder good and sufficient deeds in the name of the grantors herein, conveying the property so sold to the purchasers in fee simple, with general warranty of title, and to receive the proceeds of said sale and to apply the same as follows: First, to the payment of all necessary costs and expenses incident to the execution of said trusts, including a fee to the trustee of 5 per cent., to be estimated upon the amount realized at said sale; second, to the payment rateably of the said note then unpaid principal and accrued interest (it being understood that when default shall be made in the payment of any of said note or any installment of interest on said note, or a failure to pay any state, county, or city taxes assessed upon said property, after the same by law becomes delinquent, all the others shall become at once due and payable, at the option of the holder or holders thereof); third, the remainder, if any there shall be after the payment of all said costs and expenses, and the principal and interest of said note, shall be paid to me the said George P. Zeiss or to my heirs, assigns, or legal representatives. In case of death of the said J. F. Richardson, trustee, or of his refusal, failure, or inability for any reason within five days after such request by the holder or holders of said note as above stipulated to make said sale or to perform said trusts, then the legal holder or holders of said note or any of them may appoint in writing a substitute trustee, who shall thereupon succeed to all the estate, rights, powers, and trusts hereinbefore granted to and vested in said J. F. Richardson, trustee. And it is further specially agreed by the parties hereunto that in any deed or deeds given by any trustee or substitute duly appointed hereunder, any and all statements of facts or other recitals therein made as to the nonpayment of the money secured, or as to the request to sell, the time, place, terms of sale, and property to be sold having been duly published, or as to

any other act or thing having been duly done by any trustee, or substitute, shall be taken by any and all courts of law and equity as prima facie evidence that the said statements or recitals do state facts and are without further question to be accepted. And George P. Zeiss, the said grantor, does hereby ratify and confirm any and all acts that the trustee or substitute or his successor in this trust may lawfully do in the premises by virtue hereof. Erasures and interlineations made and approved before signing.

"Witness my hand this 15th day of February, A. D. 1913.          Geo. P. Zeiss."

It may be noted that there is no provision in the deed of trust giving Zeiss the right to be present at the sale, nor making it incumbent upon the trustee to postpone the sale until he could arrive, nor does the deed of trust provide that Zeiss be notified when the sale is to take place. But the trustee did, in fact, mail him a copy of the notice of sale, which was posted. This is admitted by all parties.

It might be well to give a resumé of the testimony.

C. F. Stevens testified:

That on the morning of the day of the sale, about 8 o'clock, he telephoned from Houston to Mr. Richardson, the trustee, at Liberty, "to know if he couldn't put the sale off until Mr. Zeiss came here, but he didn't know and didn't promise to do it." "I was under the impression that it was necessary at that time to advertise it [the sale] in the newspapers, and I wanted that information from him. I concede now that under the terms of the deed of trust that wasn't necessary, because it didn't so provide in the deed of trust." "Zeiss wanted to leave Houston at 9:10, which was to arrive here at 10:35 or 10:40, and he couldn't have reached here before that time after I communicated with the trustee."

C. F. Stevens further testified that two or three days before the sale he telephoned E. B. Pickett, Jr., who was attorney for Wirt Davis and the First State Bank, to inquire about the sale, and was told by Pickett "that the sale would have to go on as advertised, and no one told Mr. Zeiss that the sale would not take place on that day." C. F. Stevens also testified that at the time of the trustee's sale the land was worth about $4 per acre, and he figured that there were about 1,150 acres in the clear. Mr. Zeiss did not speak to him about having a member of his firm present at the sale to buy the land, although one member of his firm was in Liberty that day, "and I communicated with him, but Mr. Zeiss did not tell me to have him at the sale to buy that land for him."

F. M. Stevens testified that C. F. Stevens phoned him from Houston on the day of the sale, and asked him to request Mr. Richardson to put off the sale until Mr. Zeiss could arrive on the 10:30 train; that he then requested Mr. Richardson to wait, and Richardson said he would have to see Mr. Pickett and Mr. Davis, "that they were running it, and he couldn't give me any satisfaction, and didn't say whether he would wait or what he would do, I asked him to let me know when he sold it, and what time he was going to sell it. He never did tell me, and I was watching the sale, and my recollection is that I was in the drug store, and I didn't hear any sale called out."

J. F. Richardson, the trustee, testified:

"I made this sale at the instance of the First State Bank and Mr. Davis, and at that time I was a director of the Bank. It was after 10 o'clock when we sold the land, and we were not afraid to wait until after the train came because of an injunction; I laughingly told you we wasn't going to wait and take a chance on him coming with an injunction. We didn't hurry it up for that reason; we pulled it on time. I can't tell you whether if we hadn't been afraid of an injunction that we would have waited or not. I remember you asked me if we were going to sell the land on that day, and I told you 'Yes,' and Fred asked me to postpone it until after the train came. You telephoned to me and asked me to wait until the train came, that you and he were coming; I understood that you were coming with him. I don't know whether you came that day or not. I was acting for Mr. Davis in the sale of that land. Davis and I offered to take over his bank at Waller and put it on its feet and take care of the First National in Houston for him, but his refusal to do that had nothing to do with expediting the sale of this land. I acted for Mr. Davis in making the sale of this land. I was not acting for Mr. Zeiss. I couldn't act for him, because I was the trustee, and selling it under Mr. Davis' directions. Yes, sir; I guess I was acting for Mr. Zeiss also. I was the trustee, and acted as trustee as the law directed."

E. B. Pickett, Jr., testified that he drew the notices of sale after Mr. Richardson had been requested to make the sale by the First State Bank, and also by Mr. Wirt Davis; that he personally knows that Wirt Davis advanced the sum of $5,000 on the note. The deed of trust at first was intended for the First State Bank, but before the transaction was closed he, as attorney for the bank, advised against the loan by the bank, because Mr. Zeiss was on too much paper, and thereupon Wirt Davis advanced the money. He further testified:

That a few days before the sale took place Mr. Stevens telephoned him and asked what would be done about having the Zeiss land sold under the deed of trust, "and I simply told him that the sale would be gone ahead with just as advertised, that we couldn't postpone it any longer. I thought we had given Mr. Zeiss all the chance he could ask, and I tried to make it as emphatic as I could so he would understand that there would be no more delay."

E. B. Pickett, Jr., further testified:

That he remembers distinctly that the sale by the trustee "was made just a few minutes before that train came; can't tell how many minutes before, but my recollection is that I saw Mr. Zeiss before I got back to my office; am quite sure it wasn't made more than ten minutes before that train came; hardly think that long."

J. F. Richardson also testified:

That the train referred to arrived at Liberty on that day at 10:40 a. m. (the regular schedule being 10:35 a. m.), so he learned by inquiry of the railroad agent. "I remember of making the sale of this land on the 7th day of April, 1914, and the train came in shortly after we left the courthouse; couldn't state how many minutes, but I met Mr. Zeiss right out there on the square as I came out of the courthouse."

And there was evidence that the sale occurred in the usual manner by being announced in the usual way and formally cried out and bid off in the usual way.

E. B. Pickett, Jr., testified that the value of the land at that time was $3 or $4 per acre if the title was entirely clear. Also he testified:

That he does not know if Mr. Davis was at the ·sale, but he bid in the land for him, and that "he considered that Mr. Richardson was acting for all parties just as the law puts that obligation on him, to act with fairness, and not take advantage of any one and treat both parties alike."

A. W. Umland testified:

That the land is worth at least $4 per acre, and he thinks that he, as administrator of the estate, could sell it for $4 per acre cash. "I know about Mr. Zeiss' business at that time, and he could have paid more than $1,750 for the land then. Could not say just exactly what he could have paid for it, couldn't give any specific amount, but I know enough about his business at that time to know that he could have prevented the land being sacrificed at that figure."

That testimony he gave on direct examination. On cross-examination he testified:

"That was just four months before Mr. Zeiss died. It is a fact that he was in very straitened condition financially, and practically everything that he had was tied up. I don't know whether he had been asked time and again to pay this, and that he had promised to do so, but failed; don't know anything about it. I know that he could have paid more than $1,750 for the land at the time it was sold, because the cash he had on hand at that time was more than that. When he died there was only $2,500 on hand in the bank, and the deposits ran over $20,000, but two or three weeks before he died there had been some unusually heavy withdrawals. I don't know whether Mr. Zeiss' two or three weeks before he died had an appointment to meet Wirt Davis and Frank Richardson to make a part payment on this note or not. * * * The liabilities of the estate are about four times the assets, and under forced sale it would crowd the estates to pay 25 cents on the dollar."

Again, on direct examination, he testified·

"But in April, 1914, which was 15 months ago, conditions were much better, before the war. At the time of this sale I would say that Mr. Zeiss was solvent. If he had lived he could have worked it all out all right, but dying at the time he did left him in pretty bad shape. I think his assets at the time of this sale were equal to his liabilities."

He further testified on cross-examination:

"The inventory that I filed shows an excess of assets over liabilities, and the inventory included everything, so far as I know. Yes, sir; there was some $18,000 or $20,000 owing to the Houston banks, but I don't know whether most of that is in Liberty county stuff that is worthless; don't know whether the Finley stuff that we hold is worthless. I have never estimated that. I never had no knowledge of any of it until after his death."

And J. F. Richardson testified:

·That he and Wirt Davis, at Mr. Zeiss' request, had met him at Houston after they "had written him two or three letters and couldn't get a reply in regard to what he would do, and Mr. Davis made an appointment with him and met him at the Brazos Hotel, and we met him there and had a talk with him, and we offered to take care of this paper if he would pay the interest up on it, and add a little more additional security, and he said it was an impossibility for him to even pay the interest."

In the case of Givens v. McCray, 196 Mo. 306, 93 S. W. 379, 113 Am. St. Rep. 736, the court says:

"The mere fact that the property conveyed by deed of trust is sold in gross is not per se sufficient to avoid the sale; and no case that I am aware of has gone to that length. There must be some attendant fraud, unfair dealing, or abuse by the trustee of the confidence reposed in him, or some resulting injury from a sale. made in this way, in order to obtain the aid of a court of equity to divest a title thus acquired. In the very nature of things some latitude of discretion ought in this regard to be allowed the trustee; indeed the very instrument conferring the power contemplates this, and so long as his acts are free from any suspicion or bias, and that discretion is not arbitrarily nor unsoundly exercised, those acts will be exempt from equitable interference."

In the case of National Loan Co. v. Dorenblaser, 30 Tex. Civ. App. 148, 69 S. W. 1019, the court says:

"The· statute requires notice of sales under deeds of trust to be given by posting written or printed notices thereof in three· public places in the county where the sale is to take place, one of which shall be at the door of the courthouse of the county"—citing Fisher v. Simon, 95 Tex. 234, 66 S. W. 447, 882; Marshton v. Yaites, 66 S. W. 867. "The posting of the notices in this case, one at the courthouse door, one on a telephone pole near the northwest corner of the courthouse square, and the other on a telephone pole near the northeast corner of the said square, was practically one place, and such posting was not at three public places, as contemplated by the statute. The price for which the lot sold being grossly inadequate, the irregularity in giving the notice of sale was sufficient to set aside the sale by the trustee. "It was in the discretion of the trustee, under the terms of said deed of trust, to sell the property as a whole, or in separate parcels, and the exercise of such discretion in selling the whole lot, instead of in parcels, will not be cause for setting aside the sale, unless it operated as an injury to opposing interests. The evidence fails to show that a better price would have been realized by selling in a different manner, or that a different result, beneficial to opposing interests, would have accrued. We therefore conclude that the evidence fails to show an abuse of discretion by the trustee in selling the lot as a whole."

It will be seen that this sale was set aside not alone on account of the inadequacy of price, but on account of the irregularity in the posting, and that said posting was not at three public places as contemplated by the statute.

In the case of Evants v. Erdman, 153 S. W. 930, the court says:

"In this connection we desire to state that mere inadequacy of price paid for the lots is not alone sufficient to set the sale aside, unless that act is supplemented by proof of bad faith, mistake, or undue advantage taken of ignorance or weakness of those whose property rights are affected by the sale"—citing Hudgins v. Morrow, 47 Ark. 515, 2 S. W. 104.

Continuing, the court says:

"When plaintiff proved a sale under execution by introducing a valid judgment in execution, together with a sheriff's deed, all apparently regular, if there was any illegality or irregularity rendering the proceedings void, it was the

duty of appellee to assume the burden of establishing such facts; and the same rule applies to a sale by a trustee under a power contained in a trust deed"—citing Maverick v. Salinas, 15 Tex. 57; Kennedy v. Walker, 138 S. W. 1115.

Umland, the administrator, testified that at the time of Mr. Zeiss' death his bank had on hand only about $2,500 with which to pay off debts amounting to more than $2,500, and, in addition, he was indebted to banks in Houston in the sum of $18,000 or $20,000, and that the liabilities of the estate were about four times the assets, and that under forced sale it would crowd the estate to pay 25 cents on the dollar, and he admitted that Mr. Zeiss was in very straitened conditions financially, and practically everything was tied up. See Hampshire v. Greeves, 104 Tex. 620, 143 S. W. 147; Givens v. McCray, 196 Mo. 306, 93 S. W. 374, 113 Am. St. Rep. 736; Green Co. v. St. Louis Mutual Building Co., 196 Mo. 358, 93 S. W. 1111; Seip v. Grinnan, 36 S. W. 350; Hudgins v. Morrow, 47 Ark. 515, 2 S. W. 104; Am. & Eng. Enc. of Law, vol. 28, p. 1005; Klein v. Glass, 53 Tex. 37; Jones v. Pratt, 77 Tex. 210, 13 S. W. 887; Smith v. Perkins, 81 Tex. 157, 16 S. W. 805, 26 Am. St. Rep. 794; Georgi v. Juergen, 66 S. W. 873.

In Jones v. Pratt, supra, the court says:

"An inadequacy of price is not by itself sufficient to require the sale to be set aside. It is so great as to require it to be set aside if even slight irregularities attending the sale had been proved. But when such irregularities are not proved, they should not be sought after and created by the court in order to avoid the sale. Such a course would be destructive of execution sales. Confidence in such sales must be preserved. When they are authorized and properly conducted, great inadequacy of price alone will not be held cause for vacating them."

We have carefully examined the record and appellant's assignment of error and the propositions thereunder. The assignment is overruled. Finding no error in the action of the lower court, we are of the opinion that this cause should be affirmed.

It is so ordered.