912

## SCOTT v. WILSON et ux.
### No. 6061.

Court of Civil Appeals of Texas.
Amarillo.
May 15, 1950.

Potcet & Pruitt, Vernon, for appellant.

Leon Douglas and John A. Storey, Vernon, for appellees.

STOKES, Justice.

This is an action in trespass to try title instituted by the appellees, Les Wilson and his wife, against the appellant Henry Scott, to recover the title and possession of a town lot in the town of Vernon. The petition of appellants was in the usual statutory form and the material parts of appellant's answer consisted of a general denial and plea of not guilty.

It was stipulated at the trial that R. L. McNutt was the common source of title. McNutt had purchased the lot from Elizabeth Knipp on May 11, 1920 and, as part of the purchase price, he executed a promissory note in the sum of $1,000, to secure which a vendor's lien was retained by the grantor. Elizabeth Knipp transferred and assigned the vendor's lien note to D. O. Smith and J. M. Stafford and in 1922, they transferred and assigned it to J. W. Rogers. On October 4, 1923, Rogers instituted a suit in the district court of Wilbarger County to recover the amount due on the note and to foreclose the vendor's lien. Judgment was entered by that court on January 26, 1924, in favor of Rogers against McNutt for the sum of $1,426.27 and foreclosing the vendor's lien. On March 29, 1924, an order of sale was issued upon the judgment and placed in the hands of the sheriff of Wilbarger County who, according to his return on the order of sale, sold the lot to C. D. Greene for $443. On March 4, 1947, C. D. Greene sold and conveyed the lot to appellant, Henry Scott, for a recited consideration of $10. There is no deed in the record from the sheriff to C. D. Greene but the testimony showed the sheriff executed a deed to him and that,

for some reason not shown by the testimony, Greene did not want to take title in his own name but wanted it conveyed to his brother A. D. Greene. According to the testimony, another deed was then prepared and executed by the sheriff conveying the property to A. D. Greene and another return on the order of sale was likewise prepared and executed by the sheriff in which it was shown the property was sold to A. D. Greene. Neither of the deeds was filed for record nor was the amended return filed with, or attached to, the order of sale. The testimony showed they were retained by the attorney for the plaintiff in that case and were ultimately lost or destroyed. Whether the amended return was executed before or after the sheriff made his return and filed it with the district clerk is not shown, but the order of sale was returned under the original return, nothing being mentioned about an amended return. In establishing their title, appellees introduced the foreclosure proceedings in the case of J. W. Rogers v. R. L. McNutt; the transfer of the vendor's lien note to Rogers; the order of sale issued upon the foreclosure judgment; and a warranty deed from A. D. Greene conveying the lot to appellees for a recited consideration of $10. In order to establish the link in their chain of title between R. L. McNutt and A. D. Greene, from whom they purchased, appellees introduced an affidavit of W. Frank Edmonson of Dallas, who was sheriff of Wilbarger County when the original foreclosure was had and who sold the property under the order of sale. The affidavit was offered as an amended return upon the original order of sale. In the affidavit, the ex-sheriff stated that, pursuant to the order of sale, and after due compliance with all laws regarding notice and publication, he sold the property to A. D. Greene for the sum of $443 but that, in his return, he erroneously and inadvertently designated the purchaser as C. D. Greene instead of A. D. Greene. The affidavit was signed and sworn to at Dallas on April 9, 1947, twenty-three years after the property was sold and the original order of sale returned to the district court from which it had issued. Appellant objected to the introduction of the affidavit but his objection was overruled and the affidavit was admitted by the court as an amended return upon the original order of sale.

The case was submitted to the court without the intervention of a jury and judgment was rendered against appellant and in favor of appellees, decreeing to them the title and possession of the lot involved. Appellant duly excepted to the judgment and has brought the case to this court for review. He urges a number of assignments and points of error, the first of which is that the court erred in admitting in evidence the affidavit or amended return of the sheriff. From the foregoing statement it will be seen that the affidavit of the ex-sheriff of Wilbarger County constituted the only link which connected the title with A. D. Greene, from whom appellees purchased the property.

■ It has been held from an early day by the courts of this and many other states that a sheriff's return upon an execution or order of sale may be amended. The officer has the right to amend it at any time before it is returned to the court from which it issued, but he cannot, as a matter of right, amend it after it has been duly returned. In a proper case, the court will allow the return to be amended and the amendment will relate back to the time when the original return was made. Hill v. Cunningham, 25 Tex. 26; Thomas v. Browder, 33 Tex. 783; Messner v. Lewis, 20 Tex. 221; Citizens State Bank of Clarinda, Iowa v. Del-Tex Inv. Co., Tex.Civ.App., 123 S.W. 2d 450; Lawrence v. Aguirre, Tex.Civ. App., 59 S.W. 289; Scruggs v. Scruggs, 46 Mo. 271; Black Hills Brewing Co. v. Middle West Fire Ins. Co., 31 S.D. 318, 140 N.W. 687.

■ The proper procedure and the only permissible course to take in effecting an amendment of the return, after it has been made and filed in the court from which it issued, is to file an application therefor in the original suit from which the order of sale issued and give notice of it to all interested parties. Sparks v. McHugh, 21 Tex.Civ.App. 275, 51 S.W. 873; Houssels, et al. v. Pitts et al., Tex.Civ.App., 52 S.W.

588; Toner v. Page et al., 91 Wash. 314, 157 P. 866; Hansen v. Smart Apartments, 185 Wash. 657, 56 P.2d 670.

■■■ It is well settled that statements made in an officer's return on an execution as to the levy made thereunder, the amount of the purchase price, the action of the officer in conveying or executing a deed to the property and the name of the purchaser, together with other material statements therein are conclusive on collateral attack. This is an action of trespass to try title between parties who were strangers to the original proceeding of foreclosure and the attack or effort made by appellees to change the return made by the officer when the property was sold under order of sale in 1924 is purely collateral. The purported amended return could not be substituted for the original return. Appellant's first assignment of error will, therefore, have to be sustained. Holden v. Ryan et al., Tex. Civ.App., 268 S.W. 1022; Smith et al. v. Perkins et al., 81 Tex. 152, 16 S.W. 805, 26 Am.St.Rep. 794; Marshall v. Marshall, Tex.Civ.App., 150 S.W. 755; Lane et al. v. Kempner, Tex.Civ.App., 184 S.W. 1090.

During the trial, appellees filed a trial amendment in which they alleged that any title either C. D. Greene or A. D. Greene procured under the sheriff's sale was taken and held in trust for John A. Storey. In support of this allegation Storey testified that he was the attorney for J. W. Rogers and that, as such, he filed the original suit in which the vendor's lien was foreclosed. He testified that, after the judgment of foreclosure was procured, he paid to Rogers $300 and that Rogers assigned the judgment to him. He said the assignment was lost or destroyed with the other papers in connection with the sale and that Greene bought the property for Storey's benefit and held it in trust for him. He testified further that, since A. D. Greene was the actual purchaser at the sheriff's sale, he procured A. D. Greene to convey the property to appellees who are his son-in-law and daughter. As we have already shown, A. D. Greene was not connected with the title by any legal method. His only connection with it came through the purported amended return of the sheriff which was not admissible as evidence nor sufficient to affect the title to the property in any manner. Appellant introduced his deed from C. D. Greene and, while it was only a quit-claim deed and conveyed nothing except what C. D. Greene owned, it was sufficient to transfer whatever title he procured at the sheriff's sale. Moreover, appellees introduced in evidence a cheque issued by C. D. Greene on March 27, 1926, for $443 and payable to J. A. Storey. The cheque bore the notation "Lot 1, Blk. 72, Rob. Add." which is the lot involved in the suit. There is no explanation in the record as to why the cheque was not given when the sale was made. The amount of the cheque comports with the bid which the original return showed was made by C. D. Greene for the property. The cheque was never presented to the bank for payment and J. A. Storey testified that it was given to him by C. D. Greene. He said that, since he did not have certain papers in connection with the matter, it was not necessary to cash the cheque. He said he paid the court costs in the foreclosure suit but that he did not pay any other money to the sheriff or the court officers because he was the owner of the judgment and it would have merely been a matter of paying it to the officer and then having the officer pay it back to him. C. D. Greene was deceased at the time of the trial, but this cheque transaction would indicate that he purchased the lot for himself. The cheque was for the exact amount bid by C. D. Greene at the sheriff's sale and it was payable to Storey who was the attorney for the plaintiff in execution. The witness did not testify that C. D. Greene agreed to purchase the property at the sheriff's sale and convey it to J. A. Storey and there is no testimony in the record which indicates there was a specific agreement or arrangement between them under which Greene would purchase and hold the property in trust for Storey. No express trust, therefore could have arisen in the transaction but appellees contend that John A. Storey paid all of the purchase money for the property; that C. D. Greene did not pay any part of it; and therefore a resulting trust was created under which Greene held

the property in trust for Storey. It is not contended that Storey furnished the money to Greene with which to pay his bid for the property but that, since Storey paid Rogers $300 for the judgment after the foreclosure had been effected, he furnished the only money that changed hands by reason of the entire transaction. They contend therefore that whoever might have purchased the property at the sheriff's sale, the purchaser held it under a resulting trust for Storey's benefit.

■ As we have already shown, C. D. Greene executed and delivered to John A. Storey his cheque for $443, the exact amount of Greene's bid at the sheriff's sale and it bears a notation indicating it had something to do with the lot involved in this suit. However that may be, it is a matter of no consequence because all of the testimony concerning the alleged resulting trust was in direct conflict with the return made by the sheriff upon the order of sale. The return stated that the property was sold to C. D. Greene, who was the highest bidder therefor, and that C. D. Greene having paid the sum bid therefor, the sheriff executed a deed conveying the property to him. It further stated that, out of the $443 paid by Greene, the sheriff paid the costs of the sale amounting to $15.75, the original court costs amounting to $40.07 and "the remainder, being the sum of $388.18 was credited to judgment as shown on the minutes of court, whose receipt for the same is herewith presented and this writ is hereby returned on this the 29 day of May A. D. 1924." The contention that a trust resulted in favor of John A. Storey is based upon his testimony that C. D. Greene did not pay to the sheriff anything whatever for the lot. This testimony was in direct contradiction of the statements made by the sheriff in his return and it has consistently been held by our courts that an officer's return cannot be impeached in that manner. Flanniken v. Neal, 67 Tex. 629, 4 S.W. 212; First National Bank of Littlefield v. Cooper, Tex.Civ.App., 12 S.W.2d 271; Beaurline et al. v. Sinclair Refining Co., Tex.Civ.

App., 191 S.W.2d 774. In the Flanniken case the Supreme Court expressed the rule in plain and simple language by saying: "It is settled law in this state that a sheriff's deed is not necessary to pass title at a sheriff's sale of real estate. A valid judgment, execution, and sale are sufficient for that purpose. But a sheriff's sale is not excepted from the statute of frauds, which requires all contracts for the sale of land to be in writing, and to be signed by the party to be charged therewith. The return of the officer upon his execution ordinarily constitutes a sufficient memorandum in writing to meet the requirements of the statute, but, like other written instruments, is not subject to be varied or contradicted by parol evidence. On the contrary, as part of the record in the case, it imparts absolute verity * * * and is conclusive upon the parties until set aside by some direct proceeding for that purpose." [67 Tex. 629, 4 S.W. 213]

■ The testimony offered by appellees relative to the alleged resulting trust was objected to by appellant and he has brought the objection forward in the form of an assignment of error. We think it is clear from the holdings in the above cases that the testimony was not admissible for any purpose and the court erred in overruling appellant's objection to it.

From what we have said it is clear, we think, that appellees failed to establish their case. There was no legal connection between R. L. McNutt, the common source, and A. D. Greene, from whom they purchased the lot and since A. D. Greene is not shown, by legal and competent evidence, to have owned any interest in the lot, appellees procured nothing by their deed from him. Under these conditions appellees were not entitled to a judgment and the court below erred in rendering judgment in their favor. The case seems to have been fully developed upon the trial and nothing could be gained by remanding it to the trial court. The judgment of the court below will, therefore, be reversed and judgment will be here rendered that appellees take nothing by their suit.